J-S27029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHAKIR MOSI SMITH :
:
Appellant : No. 312 WDA 2021

Appeal from the Judgment of Sentence Entered October 22, 2020
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001248-2019

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHAKIR MOSI SMITH :
:
Appellant : No. 313 WDA 2021

Appeal from the Judgment of Sentence Entered October 22, 2020
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000562-2020

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: NOVEMBER 2, 2021**

Appellant Shakir Mosi Smith appeals from the judgment of sentence

following a jury trial and convictions for solicitation to commit murder and

_____

[*] Retired Senior Judge assigned to the Superior Court.

murder of the first degree as an accomplice.[1]  Appellant contends the trial court erred by denying his pretrial motions (1) for a bill of particulars, (2) to preclude prior bad acts, (3) and to suppress evidence, and he also challenges the sufficiency and weight of the evidence.  We affirm.

Because the parties are familiar with the history of this matter, we limit our discussion to the facts necessary to resolve Appellant's claims.  By way of brief background, Appellant, while he was in prison, ordered Carol Ashcom's death.  **See generally** Trial Ct. Op., 2/24/21, at 4-13 (summarizing the extensive trial testimony); Trial Ct. Op., 6/9/20, at 2-13.  Ashcom was a confidential informant who purchased drugs from Appellant several times in April 2014.  N.T. Trial, 9/28/20, at 49.  As a result, the police arrested Appellant, who was imprisoned in Cambria County Prison in June 2014.[2]  **Id.** While incarcerated, Appellant learned Ashcom's identity and ordered her death, and discussed ordering the deaths of others.  **See, e.g.**, **id.** at 59, 61-63, 136.  Ashcom was killed on or before March 11, 2015.  **Id.** at 37.

As a result of their investigation into Ashcom's death and Appellant's drug organization, the police applied for a wiretap of Appellant's prison visits,

_____

[1] 18 Pa.C.S. §§ 902(a), 2502(a).  Specifically, the Commonwealth charged Appellant with solicitation at docket no. 1248-2019, and with first-degree murder at docket no. 562-2020.  The trial court subsequently consolidated both cases on July 8, 2020.  Order, 7/8/20.

[2] Appellant pled guilty to the drug offenses in March 2016.  N.T. Trial, 9/28/20, at 49.

which this Court granted. *Id.* at 65. The police also reviewed letters that Appellant sent to India Snyder from prison, which ordered Ashcom's death and included threats to kill Snyder. *Id.* at 155, 161, 172. Eventually, the Commonwealth filed informations charging Appellant with the above offenses.

On February 10, 2020, Appellant filed a motion in *limine* to preclude, under Pa.R.E. 404(b), six prior bad acts, which the trial court denied on June 9, 2020. Trial Ct. Op., 6/9/20. Meanwhile, on February 17, 2020, Appellant filed another motion to suppress evidence from the above wiretap and Appellant's prison letters to Snyder, among other items. **See generally** Appellant's Mot. to Suppress, 2/17/20. The trial court denied this motion on May 21, 2020. Trial Ct. Op., 5/21/20. On May 4 and August 3, 2020, Appellant filed two motions for bill of particulars, which the court denied on September 18, 2020. **See** Trial Ct. Op., 9/18/20.

A jury trial began on September 28, 2020. In relevant part, Snyder testified that Appellant ordered Ashcom's death. **See, e.g.**, N.T. Trial, 9/28/20, at 124-25, 200-01. Four of Appellant's cellmates also testified that Appellant stated he ordered Ashcom's death. **See, e.g.**, N.T. Trial, 9/29/20, at 83, 94, 110; N.T. Trial, 9/30/20, at 9. Appellant took the stand and denied ordering Ashcom's death. **See, e.g.**, N.T. Trial, 9/30/20, at 110.

When the trial court charged the jury, it gave a cautionary instruction regarding the prior bad acts at issue in this appeal. *Id.* at 166-67. Specifically, the trial court charged the jury that the prior bad acts can only

be used for the limited purposes of "[p]roving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." *Id.* at 167. The trial court instructed the jury to not use the prior bad acts as "showing that a defendant is a person of bad character or criminal tendencies from which you might be incline[d] to infer guilt." *Id.* On September 30, 2020, the jury found Appellant guilty of the aforementioned offenses.

The trial court ordered a presentence investigation report, and on October 22, 2020, it sentenced Appellant to life imprisonment without possibility of parole for first-degree murder as an accomplice and a concurrent sentence of twenty to forty years' imprisonment for criminal solicitation of murder. On October 28, 2020, Appellant timely filed a post-sentence motion that preserved his appellate issues, including a challenge to the weight of the evidence. On February 24, 2021, the trial court denied Appellant's post-sentence motion.

Appellant timely appealed on March 1, 2021, and voluntarily filed a Pa.R.A.P. 1925(b) statement that same day although the trial court did not order him to comply.[3] The trial court filed a Rule 1925(a) opinion that relied

---

[3] Appellant filed a separate notice of appeal and Rule 1925(b) statement for each of the above-captioned docket numbers. Because Appellant complied with **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018), we *sua sponte* consolidated Appellant's appeals. Order, 3/29/21.

on its decision denying Appellant's post-sentence motion. Trial Ct. Op., 2/24/21.

Appellant raises the following issues on appeal, which we reordered as follows:

1. The Appellant respectfully submits that the trial [court] erred in denying the Appellant's pre-trial motion for bill of particulars.

2. The Appellant respectfully submits that the trial court erred in denying his pre-trial motion in *limine* in regard[] to Commonwealth's introduction of prior bad acts.

3. The Appellant respectfully submits that the trial court erred in denying his pre-trial motion to suppress in regards to the wiretap that recorded the Appellant's in-person visits at the prison.

4. The Appellant submits that his conviction for the following counts: solicitation to commit murder, and murder in the first degree as an accomplice, was against the weight and sufficiency of the evidence as presented by the Commonwealth at trial.

Appellant's Brief at 6.

**Bill of Particulars**

In support of Appellant's first issue, Appellant contends the court erred by denying his motions for bills of particulars. *Id.* at 42. By way of background, the Commonwealth's information for solicitation states:

That [Appellant] did solicit the crime of murder; that is, on or between June 2014 and March 11, 2015, [Appellant] did, with the intent of promoting or facilitating the commission of a crime, commanded, encouraged or requested another person to engage in specific conduct which would constitute the murder of Carol Ashcom, or an attempt to commit the murder, or which would establish his complicity in its commission or attempted commission of the murder, while incarcerated in the Cambria

- 5 -

County Prison; in violation of Title 18 Pa.C.S.A. § 902(a) for the crime of Title 18 Pa.C.S.A. § 2502(a).

Information, 1248-2019, 10/18/19. The Commonwealth's information for murder states:

That [Appellant] did commit murder as an accomplice as defined by 18 Pa.C.S.A. § 306(c) by intentionally causing the death of another human being, namely Carol Ashcom, at 640 Virginia Avenue, Lower Yoder Township, Johnstown, Cambria County; in violation of Title 18 Pa.C.S.A. § 2502(a).

Information, 562-2020, 6/17/20.

On appeal, Appellant argues that he was entitled to the dates, times, and locations of the charged offenses so he could prepare a proper defense. Appellant's Brief at 43. Because the Commonwealth never provided the specific dates of the offenses, Appellant claims the trial court erred. *Id.* at 42-43.

The Commonwealth counters that Appellant did not establish the trial court abused its discretion. Commonwealth's Brief at 34. The Commonwealth contends that it provided a timeframe for the solicitation, specifically June 2014, until March 11, 2015, the date the victim was killed. *Id.* at 35. The Commonwealth points out it provided, as part of its discovery, various letters and recorded phone calls providing the relevant dates, times, and locations.[4] *Id.* at 35-36.

---

[4] The Commonwealth did not argue waiver.

We review a ruling on a motion for a bill of particulars for an abuse of discretion. ***Commonwealth v. Libengood***, 152 A.3d 1057, 1059 (Pa. Super. 2016). To the extent "this case presents an issue of interpretation of the relevant rules of criminal procedure[,] our standard of review is *de novo* and our scope of review is plenary." ***Id.*** (citation omitted).

The relevant rule is Pennsylvania Rule of Criminal Procedure 572, which states:

> (A) A request for a bill of particulars shall be served in writing by the defendant upon the attorney for the Commonwealth within 7 days following arraignment. The request shall promptly be filed and served as provided in Rule 576.
>
> (B) The request shall set forth the specific particulars sought by the defendant, and the reasons why the particulars are requested.
>
> (C) Upon failure or refusal of the attorney for the Commonwealth to furnish a bill of particulars after service of a request, the defendant may make written motion for relief to the court within 7 days after such failure or refusal. If further particulars are desired after an original bill of particulars has been furnished, a motion therefor may be made to the court within 5 days after the original bill is furnished.
>
> (D) When a motion for relief is made, the court may make such order as it deems necessary in the interests of justice.

Pa.R.C.P. 572.

> Our Supreme Court explained as follows:
>
> A bill of particulars, an anachronism of past procedural rules, serves a narrow purpose; it is not an appropriate vehicle by which to obtain discovery of the Commonwealth's evidence[.]
>
> A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double

jeopardy and the statute of limitations. It is not a substitute for discovery and the Commonwealth's evidence is not a proper subject to which a bill of particulars may be directed.

*Commonwealth v. Champney*, 832 A.2d 403, 412-13 (Pa. 2003) (citations omitted and formatting altered). "[W]hen there is no evidence that (1) the Commonwealth withheld exculpatory evidence, or evidence otherwise favorable to the accused; (2) exceptional circumstances existed; or (3) 'surprises' occurred at the trial, we will not find an abuse of discretion." *Commonwealth v. Mercado*, 649 A.2d 946, 959-60 (Pa. Super. 1994) (citations omitted).

For example, in *Champney*, the trial court denied the defendant's motion for a bill of particulars requesting the Commonwealth to specify, among other items, motive, identities of any co-conspirators, and specific acts in furtherance of the conspiracy at issue. *Champney*, 832 A.2d at 413. The *Champney* Court held that the trial court did not abuse its discretion because, among other reasons, the defendant "was made well aware of the nature of the Commonwealth's evidence" through the discovery process. *Id.*

Instantly, we agree with the trial court that the informations identified the dates, times, and locations as to sufficiently apprise Appellant of the charges against him. *See id.* at 412-13. Further, similar to the defendant in *Champney*, Appellant was provided with the Commonwealth's discovery, which included letters and recorded calls with specific dates, times, and locations. *See id.* at 413. Regardless, Appellant has not identified any

withheld exculpatory or favorable evidence, surprises at trial, or other exceptional circumstances. ***See Mercado***, 649 A.2d at 959-60. For these reasons, we agree with the trial court that it did not abuse its discretion in denying Appellant's motions for a bill of particulars, and therefore Appellant is due no relief on this issue. ***See Libengood***, 152 A.3d at 1059.

## Prior Bad Acts Motion *In Limine*

In support of his second issue, Appellant argues the trial court erred in denying his motion *in limine* to preclude the Commonwealth's introduction of six prior bad acts. Appellant's Brief at 27. First, Appellant did not want the Commonwealth to introduce his prior criminal record, including the fact that he "was incarcerated at the time of the alleged criminal acts charged." ***Id.*** at 29. Second, Appellant argues he was not charged or implicated in the death of Jarret Smith, who Appellant believed was a confidential informant, and therefore the jury should not hear any reference to his death. ***Id.*** Third, Appellant asserts that because he was not charged or implicated in the shooting of Richard Agurs, also known as "Noog," the jury should not hear about Agurs' shooting. ***Id.*** at 29-30. Fourth, Appellant contends that his use of the term "Rhino" should be precluded because the "term or [its] alleged meaning . . . was so inflammatory that" a fair and impartial trial was impossible. ***Id.*** at 30. Fifth, Appellant claims that a letter he wrote threatening Snyder was not relevant, would only confuse the jury, and cast him in a negative light. ***Id.*** at 31. Sixth, Appellant states that any reference

to his use of racially insensitive terms should be precluded because his jury

"was composed entirely of Caucasians." ***Id.***

The standard of review follows:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation

omitted).

With respect to prior bad acts, Pennsylvania Rule of Evidence 404(b)

states as follows:

*(1) Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

This Court has noted:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence

- 10 -

of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. All relevant evidence is admissible, except as otherwise provided by law.

Evidence will not be excluded merely because it is harmful to a defendant's case. The trial court is not required to sanitize the trial to eliminate all unpleasant facts where those facts are relevant to the issues at hand.

Mere similarities between a defendant's prior bad acts and the crimes for which he is being tried will not qualify for a Rule 404(b)(2) exception. Rather, to qualify for an exception to Rule 404(b)(1)'s general prohibition, the prior bad acts must have a close factual nexus sufficient to demonstrate their connective relevance to the crime in question.

*Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019) (*en banc*) (citations omitted and formatting altered), *appeal denied*, 224 A.3d 364 (Pa. 2020). "Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citations omitted) (holding trial court's instruction on Pa.R.E. 404(b) evidence minimized likelihood of prejudice). Similarly, "any error in admission of prior bad acts was cured by the trial court's contemporaneous administration of a cautionary instruction and by its final instruction limiting

- 11 -

the jury's consideration of the prior bad acts evidence." ***Id.*** at 667 (citation omitted).

Instantly, after careful review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, concerning this issue, we affirm on the basis of the trial court's opinion. ***See*** Trial Ct. Op., 6/9/20, at 2-13. The trial court thoroughly addressed each of the prior bad acts at issue and concluded that Pa.R.E. 404(b) did not preclude their introduction. ***See id.***; ***Akhmedov***, 216 A.3d at 316. Regardless, even if any of the prior bad acts were improperly admitted, the trial court's cautionary instruction, including an admonition to not infer Appellant's guilt, cured any resulting prejudice. ***See*** N.T. Trial, 9/30/20, at 166-67; ***Hairston***, 84 A.3d at 666-67. For these reasons, because the trial court did not abuse its discretion, we affirm on the basis of the trial court's reasoning. ***See LeClair***, 236 A.3d at 78.

### Suppression of Wiretap Evidence

For his third issue, Appellant argues the trial court erred by denying his motion to suppress the evidence from a wiretap, specifically recordings of his conversations with Appellant's prison visitors. Appellant's Brief at 34. By way of background, when the Commonwealth applied for wiretap authorization, it attached a police officer's forty-three page affidavit of probable cause. ***See*** Ex. A to Appellant's Mot. to Suppress, 2/17/20 (attaching the officer's affidavit as exhibit). In relevant part, the officer averred "that normal investigative procedures have been tried and failed, reasonably appeared unlikely to

succeed if continued or attempted, or reasonably appear too dangerous to employ." *Id.* at ¶ 10. In sum, the affidavit exhaustively discussed the police's investigation into Appellant's drug trafficking organization, including numerous controlled purchases of narcotics, evidence seized from the execution of other search warrants, and the homicides of Jarret Smith and the instant victim. *See generally id.*

On appeal, Appellant contends that the Commonwealth's application for a wiretap did not fulfill the requirements of 18 Pa.C.S. § 5709(3)(i)-(vii). Appellant's Brief at 40. Specifically, Appellant argues that probable cause was lacking because Appellant "did not make any 'incriminating' statements." *Id.* at 37. Appellant faults the Commonwealth for not providing specific details and he complains that the affidavit alleges several crimes for which he had not been charged. *Id.* at 38-40. Appellant asserts the Commonwealth failed to identify the steps taken in its normal procedures to investigate Appellant. *Id.* at 40-41. Appellant also claims that the trial court should have suppressed eight letters he sent to Snyder from prison because he had a reasonable expectation of privacy. *Id.* at 41.

The Commonwealth counters by summarizing the affidavit in support of the wiretap, which, in the Commonwealth's view, fulfilled the statutory requirements for a wiretap. Commonwealth's Brief at 30-32. The Commonwealth also points out that generally, a prisoner has no right to privacy in non-privileged prison mail. *Id.* at 33.

The standard of review follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

In 2015, a wiretap was required to intercept and record prison visit conversations unless the record established the absence of a reasonable expectation of privacy.[5] *See Commonwealth v. Fant*, 146 A.3d 1254, 1265 & n.13 (Pa. 2016).

With respect to authorizing a wiretap, Section 5709 states:

Each application for an order of authorization to intercept a wire, electronic or oral communication shall be made in writing upon

---

[5] The General Assembly subsequently amended the Wiretap Act to permit interception of prison visit conversations without prior court approval. *See Commonwealth v. Byrd*, 235 A.3d 311, 315 (Pa. 2020).

the personal oath or affirmation of the Attorney General or a district attorney of the county wherein the suspected criminal activity has been, is or is about to occur and shall contain all of the following:

\* \* \*

(3) A sworn statement by the investigative or law enforcement officer who has knowledge of relevant information justifying the application, which shall include:

(i) The identity of the particular person, if known, committing the offense and whose communications are to be intercepted.

(ii) The details as to the particular offense that has been, is being, or is about to be committed.

(iii) The particular type of communication to be intercepted.

(iv) A showing that there is probable cause to believe that such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be intercepted.

(v) The character and location of the particular wire communication facility involved or the particular place where the oral communication is to be intercepted.

(vi) A statement of the period of time for which the interception is required to be maintained, and, if the character of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter.

(vii) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ.

18 Pa.C.S. § 5709(3)(i)-(vii).

Generally, suppression is not a remedy if the Commonwealth fails to include a statement in compliance with subsection vii:

> Section 5721.1 of the Wiretap Act provides that an aggrieved party may move to exclude the contents of a wiretap or evidence derived therefrom on six grounds. This creates a situation where a Common Pleas judge can rule that a Superior Court judge erred when determining that there was a legal basis to authorize a wiretap. Section 5721.1 further provides that the **only judicial remedies and sanctions for non-constitutional violations** of the wiretap provisions are those exclusively found in 5721.1. The plain language of section 5721.1 limits the availability of suppression as a remedy for non-constitutional violations to six grounds specifically enumerated. The normal investigative procedures requirement is **not** included. Accordingly, suppression is not available as a remedy **even if** alternate methods of investigation were available and not used.

*Commonwealth v. Steward*, 918 A.2d 758, 760-61 (Pa. Super. 2007) (citations and footnotes omitted, emphases in original, and formatting altered).

Suppression, however, may be a remedy if a defendant establishes a constitutional violation, *e.g.*, the absence of probable cause. **See Commonwealth v. Burgos**, 64 A.3d 641, 655 (Pa. Super. 2013). "The standard for determining whether probable cause existed [for a wiretap] is the same as that used to determine cause for search warrants." *Commonwealth v. Doty*, 498 A.2d 870, 882 (Pa. Super. 1985) (citations omitted); *accord Burgos*, 64 A.3d at 655.

> The question of whether probable cause exists for a wiretap must be adjudged by the totality of the circumstances. Pursuant to the totality of the circumstances test set forth by the United States Supreme Court the task of the trial court is simply to make a practical, common-sense decision whether, given all of the

- 16 -

circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . An affidavit of probable cause to support a search warrant does not require a *prima facie* showing of criminal activity on the part of the occupants of the premises to be searched. Moreover, a reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination. The role of both the reviewing court and the appellate court is confined to determining whether there is substantial evidence in the record supporting the decision to issue the warrant. We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause.

*Burgos*, 64 A.3d at 655-56 (citations omitted and formatting altered).

Finally, with respect to prison letters, prisoners have "no constitutional right to privacy in [their] non-privileged prison mail." *Commonwealth v. Moore*, 928 A.2d 1092, 1102 (Pa. Super. 2007).

Here, after careful review of the officer's forty-three page affidavit in support of probable cause for a wiretap, we agree with the trial court that there was substantial evidence of probable cause to authorize the wiretap application. *See* Trial Ct. Op., 5/21/20, at 5-6; *Burgos*, 64 A.3d at 655-56; *see also* Ex. A to Appellant's Mot. to Suppress, 2/17/20 (attaching the officer's affidavit as exhibit). We agree with the trial court that the officer's affidavit extensively describes Appellant's drug trafficking organization, including substantial evidence that Appellant ordered the killing of Ashcom. *See generally* Ex. A to Appellant's Mot. to Suppress, 2/17/20. We further agree with the trial court that the officer averred that normal investigative

procedures had failed, would fail, or were too dangerous. *See id.* at ¶ 10; Trial Ct. Op., 5/21/20, at 6; *see generally* 18 Pa.C.S. § 5709(3)(vii). Regardless, suppression on these facts is not a remedy based on the instant allegation that the officer failed to discuss normal investigative procedures in his affidavit. *See Steward*, 918 A.2d at 760-61. Finally, we agree with the trial court that Appellant had no reasonable expectation of privacy in the non-privileged letters written by him while in prison. *See* Trial Ct. Op., 5/21/20, at 7-10; *Moore*, 928 A.2d at 1102. Accordingly, Appellant is due no relief on this issue.

### Sufficiency and Weight of the Evidence

For his final issue, Appellant challenges the sufficiency and weight of the evidence for all his convictions. Appellant's Brief at 13. In support, Appellant argues that but for the instant convictions, Ashcom's murder "remains unsolved." *Id.* at 14. Appellant asserts that the Commonwealth did not "produce the actual shooter" or present any evidence in which he "directed anyone to kill" Ashcom. *Id.* at 14-15. In Appellant's view, the Commonwealth presented significant inflammatory evidence including prior bad acts, but it did not establish Appellant ordered anyone to kill Ashcom. *Id.* at 15. Appellant also states that the Commonwealth did not specifically identify any dates or times "when the alleged acts occurred which resulted in [Ashcom's] death." *Id.* With respect to the weight of the evidence, Appellant argues that the jury erred given the lack of evidence. *Id.* at 27.

The standard of review for a sufficiency challenged is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted).

Criminal solicitation is defined as follows:

A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S. § 902(a). Murder of the first degree is defined as a "criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." *Id.* 2502(a). Section 306 of the Crimes Code defines accomplice liability as follows:

- 19 -

**(a) General rule.—**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another.—**A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.—**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.—**When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

\* \* \*

**(g) Prosecution of accomplice only.—**An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been

convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S. § 306.

In *Commonwealth v. Rios*, 721 A.2d 1049 (Pa. 1998), our Supreme Court explained accomplice liability in the context of first-degree murder:

It is well established that an accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. In order to sustain a conviction for first degree murder via accomplice liability, the Commonwealth's evidence must be sufficient to establish that appellant possessed specific intent to kill. Whether an accomplice possessed the same intent to kill as his co-conspirator may be inferred from words, conduct, the attendant circumstances including the actions taken after the killing and all reasonable inferences that follow from them.

*Rios*, 721 A.2d at 1053 (citations omitted).

After careful consideration of the record, the parties' arguments, and the trial court's opinion, concerning these issues, we affirm on the basis of the trial court's opinion. *See* Trial Ct. Op., 2/24/21, at 2-16. Specifically, we agree with the trial court that there was sufficient evidence to support Appellant's convictions and find no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See id.*; *Widmer*, 744 A.2d at 751-52. Appellant is due no relief concerning sufficiency and weight of the evidence. For all these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 21 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   11/02/2021

## IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,
    Plaintiff,

  vs.

SHAKIR SMITH,
    Defendant.

: No. 1248-2019

: Motions for Suppression

:
:
:
:
:
:

## OPINION

**Kiniry, J.,** 20 May, 2020. This matter comes before the Court as a result of Defendant Shakir Smith ("Smith") filing a Motion to Suppress and a Supplemental Motion to Suppress. Smith is charged by Criminal Information filed on October 18, 2019 at the above captioned case number with Solicitation to Commit Murder. Smith filed a Motion to Suppress concerning the wiretap issued for the visitor's booths at the Cambria County Prison on February 17, 2020, and a Supplemental Motion to Suppress concerning letters written by and to the Defendant from an individual named India Snyder on March 31, 2020 and arguments were held on both motions on April 29, 2020. After reviewing the hearing transcript and both motions, the Court **DENIES** Defendant Smith's Motions to Suppress and Supplemental Motion to Suppress for the reasons that follow.

## FACTS AND PROCEDURAL HISTORY

This case arises out of the alleged solicited homicide of a confidential informant by the name of Carol Ashcom that occurred in Cambria County, Pennsylvania in 2015. The Commonwealth avers that the Defendant was incarcerated at the time of the solicited homicide as a result of the Defendant's arrest for the drug sales made by the Defendant to Carol Ashcom, the confidential informant. The Commonwealth submitted an Application

1

for an Order Authorizing the Interception of Wire Communications concerning this incident to a Superior Court Judge of Pennsylvania. The Application was based upon probable cause that Defendant Smith and others, some known and some yet unknown, committed offenses, one of those involving the murder of Carol Ashcom. A Superior Court Judge of Pennsylvania granted the Commonwealth's request and a wiretap was conducted at the Cambria County Prison visitor's booth.

## LEGAL STANDARD

Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. Commonwealth v. Wallace, 42 A.3d 1040, 1047-1048 (Pa. 2012) citing Pa.R.Crim.P. 581(H). "The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures." Commonwealth v. By, 812 A.2d 1250, 1254 (Pa. Super. 2002). It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. Commonwealth v. Griffin, 785 A.2d 501, 505 (Pa.Super.2001). "Probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" Commonwealth v. Wright, 867 A.2d 1265, 1268 (Pa.Super.2005).

## DISCUSSION

### II. Motion to Suppress

Defendant avers that the Commonwealth plans to use the Superior Court authorized wiretap recordings of the Defendant and numerous individuals while Defendant was at the

2

Cambria County Prison. Defendant argues that the request for the wiretap was speculative and in contradiction of the requirements of the wiretap statute. Defendant contends that he had a reasonable expectation of privacy in the visitor telephone calls that took place at the Cambria County Prison. Defendant submits that the Application and Supplemental Affidavit submitted to a Superior Court Judge by the Commonwealth was defective and based upon speculation.

The Commonwealth argues that the request for authorization for the wiretap was made pursuant to the Pennsylvania Wiretap Act, was not based upon speculation, and it is not relevant to the Superior Court Judge's determination of probable cause that the Defendant be charged with the crimes either being investigated or identified within the Affidavit. The Commonwealth also argues that the Defendant does not have a reasonable expectation of privacy, and that the expectation of privacy is not relevant to a consideration of the interception of electronic or wire communications. The Commonwealth avers that the Supplemental Affidavit to the wiretap application supported the need for interception by noting the Defendant's awareness that his telephone calls to and from the jail were being intercepted and he was avoiding making incriminating statements in those conversations for that reason. Lastly, the Commonwealth argues that the following were investigative procedures that were attempted: the controlled purchases of drugs, the execution of search warrants, the review of telephone records, the use of pole cameras, the review of jail visitor and mail logs, the review of jail telephone calls, and interviews of witnesses and other sources of information.

Pennsylvania Wiretap Act emphasizes the protection of privacy. Because of privacy concerns, the provisions of the Pennsylvania Wiretap Act are strictly construed. Commonwealth v. Spangler, 809 A.2d 234 (Pa. 2002). "The Wiretap Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion will not be electronically recorded." Commonwealth v. Prisk, 13 A.3d 526 (Pa.. 2011). "To determine whether one's activities fall within the right of privacy, the court must examine first, whether the defendant exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable." Id. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved." Id..

As set forth by the Wiretap Statute, a wiretap application must be made to a Superior Court Judge. Pursuant to Title 18 Pa.C.S.A. Section 5709(3)(i-vii), the application must include the following:

> (3) A sworn statement by the investigative or law enforcement officer who has knowledge of relevant information justifying the application, which shall include:
>
> (i) The identity of the particular person, if known, committing the offense and whose communications are to be intercepted.
>
> (ii) The details as to the particular offense that has been, is being, or is about to be committed.
>
> (iii) The particular type of communication to be intercepted.
>
> (iv) A showing that there is probable cause to believe that such communication will be communicated on the wire communication facility

involved or at the particular place where the oral communication is to be intercepted.

(v) The character and location of the particular wire communication facility involved or the particular place where the oral communication is to be intercepted.

(vi) A statement of the period of time for which the interception is required to be maintained, and, if the character of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter.

(vii) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ.

The Court notes that, pursuant to Title 18 Pa.C.S.A. Section 5721.1, "the Wiretap Act provides that an aggrieved party may move to exclude the contents of a wiretap or evidence derived therefrom on six grounds." Commonwealth v. Steward, 918 A.2d 758 (Pa. Super. 2007). Further, Section 5721.1 provides that "the only judicial remedies and sanctions for non-constitutional violations of the wiretap provisions are those exclusively in 5721.1," and "the plain language of Section 5721.1 limits the availability of suppression as a remedy for non-constitutional violations to six grounds specifically enumerated. The normal investigative procedures requirement is not included." Id. "Accordingly, suppression is not available as a remedy even if alternate methods of investigation were available and not used." Id.

The Superior Court Judge found that probable cause existed to believe that particular wire communications of Defendant Smith concerning the murder of Carol Ashcom would be obtained through interception. The Superior Court Judge also found that there was probable

5

cause to believe that normal investigative procedures either had been tried and had failed or reasonably appear to be unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried, or are too dangerous to employ. Lastly, the Superior Court Judge found that there was probable cause to believe that conversations regarding the murder of Carol Ashcom were taking place during Defendant Smith's pre-scheduled visits, in the visitors area of the Cambria County Prison, using a hand held receiver inside a visitor's booth which separates Defendant Smith from his visitor with a clear glass divider.

In the Application and Affidavit the Commonwealth provided a particular statement of facts regarding other unsuccessful normal investigative procedures. Specifically, listed in paragraph 22 were procedures which were attempted or reasonably appeared to be unlikely to succeed if tried. The Court notes that the Defendant brought numerous paragraphs of the Affidavit in Support of Application to this Court's attention. This Court has thoroughly reviewed the entirety of the Application for the wiretap and Affidavit in Support of Application and finds that probable cause existed for the Superior Court Judge to issue an order authorizing the use of the wiretap. As such, this Court finds similarly to the Superior Court Judge's findings, that the Application for Wiretap and Supplemental Affidavit contained the appropriate probable cause to support the Application, and that normal investigative procedures were attempted or undertaken for the specific crimes at hand. Therefore, the Court denies Defendant Smith's Motion for Suppression.

## II. Supplemental Motion to Suppress

Defendant argues that the Commonwealth intends to present eight letters allegedly written by the Defendant to India Snyder while the Defendant was incarcerated in the

6

Cambria County Prison. The Defendant avers that the Commonwealth will use these letters to show that the Defendant was directing India Snyder to inform other individuals to kill Carol Ashcom because she was a confidential informant. Defendant argues that the Court should suppress these letters because Defendant has a reasonable expectation of privacy pursuant to the Fourth Amendment of the United States Constitution regarding his out-going mail, and argues that it is the Cambria County Prison's policy not to inspect an inmate's out-going mail. Further, as to other the letters obtained by the Commonwealth through a second warrant, Defendant argues that there was no basis for the issuance of a warrant to obtain those letters.

The Commonwealth contends that it intends to submit multiple letters written to India Snyder by the Defendant while he was incarcerated, as well as letters written by India Snyder to the Defendant. The Commonwealth argues that the Defendant does not have a reasonable expectation of privacy in the content of letters written from within the Cambria County Prison. The Commonwealth also argues that the Defendant was aware that all mail would or could be opened, and that the Defendant himself could not reasonably believe that the contents of a letter would remain unknown to the prison. Lastly, the Commonwealth argues that the Defendant has no standing to object to the use of letters that the Defendant sent to another individual.

"The Supreme Court of the United States has made it clear that the Fourth Amendment protects people wherever the individual may harbor a reasonable expectation of privacy. Once it is established the individual is within an area where he has a reasonable expectation of privacy, he is entitled to be free from unreasonable intrusions by the

7

Government." Commonwealth v. Strickland, 326 A.2d 379 (Pa. 1974). "The test for determining whether the defendant has standing to challenge the constitutionality of a search or seizure is whether, under the circumstances, the defendant had a reasonable expectation of privacy based upon his own use of the searched premises." Id. In order for seized evidence to be suppressed, a defendant must demonstrate a privacy interest that was "actual, societally sanctioned as reasonable, and justifiable in the place invaded." Commonwealth v. Sell, 504 Pa. 46 (1983). "Under the Fourth Amendment, the defendant has to prove by the totality of the circumstances that he had a legitimate expectation of privacy in the place invaded. To be considered legitimate, an expectation of privacy must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Id.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. Wallace, 42 A.3d 1040, 1047-1048 (Pa. 2012) citing Pa.R.Crim.P. 581(H). The Supreme Court of Pennsylvania has recognized that "prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." Payne v. Commonwealth Dept. of Corrections, 582 Pa. 375 (2005). "Although prison walls do not separate inmates from their constitutional rights because of the unique nature and requirements of the prison setting, imprisonment carries with it the circumscription or loss of many significant rights." Small v. Horn, 554 Pa. 600 (1998). The mail system is a way that prisoners have transported mail into and out of a prison. "An unrestricted privacy interest in non-privileged mail would assist criminal

objectives by facilitating the transmission of information." <u>Commonwealth v. Moore</u>, 928 A.2d 1092.

Officer Tom Owens testified for the Commonwealth at the hearing held on April 29, 2020 that he was the affiant of the search warrant to obtain letters and documents addressed to India Snyder from Defendant Smith during the time he was incarcerated. There were a total of sixty-five (65) letters seized. Officer Owens testified at the hearing that, although he had a warrant to obtain the letters, he had received the consent to search from an individual named Joyce Kinsey, who is the mother of India Snyder. There were letters and documents located in Ms. Kinsey's vehicle at the time of the search that India Snyder had received from Defendant Smith. Officer Owens also testified that a search warrant was obtained for Defendant Smith's holding cell at the Cambria County Prison. The subjects of that search were letters, writings, correspondences, notes, photographs, books, papers and drawings. Further, Officer Owens also received another signed consent to search form from India Snyder to search her residence for letters India Snyder received from the Defendant.

Officer Owens further testified that the Cambria County Prison Inmate Handbook for February 2013, the copy in use at the time of the relevant searches, stated as follows: **"Letters will be opened and checked for contraband. Any letter containing contraband will be returned to the sender. Legal mail will be opened and searched in your presence."** Further, **"All outgoing mail may be opened and inspected if contraband items are suspected."** Therefore, inmates are aware that, according to the prison inmate handbook, outgoing mail could also be opened. The handbook also states that, **"Searches of housing units will be performed on an unannounced and irregular basis. Your**

**cell/cube and your belongings are subject to search at any time. Your presence at cell/cube search is not legally required."** Lastly, Officer Owens testified that every inmate that is brought into the Cambria County Prison is issued a handbook, and they receive counselling regarding the regulations contained in the handbook by their counselor.

The Court agrees that, pursuant to the Cambria County Inmate Handbook, the Defendant would have been aware that incoming and outgoing mail would or could be opened and viewed by the prison. Defendant Smith wrote and sent numerous letters to India Snyder. Once Defendant Smith placed those letters into the mail system at the Cambria County Prison, the Defendant should reasonably been aware that the letters potentially could be searched and read pursuant to the prison policy, and also at the point the Defendant mailed the letters he abandoned his expectation of privacy that those letters would not be read by anyone other than India Snyder once the letters were in her possession and under her control. Once the letters were received by India Snyder, or any other individual Defendant Smith wrote to, Defendant Smith no longer retained control over the letters. Therefore, for the reasons stated above, the Court finds that the Defendant did not have a reasonable expectation of privacy in the content of the letters written while he was at the Cambria County Prison, and denies the Defendant's Supplemental Motion to Suppress.

**AS A RESULT OF THE ABOVE DISCUSSION, THE COURT ENTERS THE FOLLOWING ORDER:**

10

## IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,
        Plaintiff,

vs.

SHAKIR SMITH,
        Defendant.

: No. 1248-2019
:
: Motions for Suppression
:
:
:
:
:

## ORDER

**AND NOW**, on this 20th day of May, 2020, after reviewing Defendant Smith's Motion to Suppress and Supplemental Motion to Suppress, the arguments made by counsel at the Suppression Hearing and legal memoranda, it is hereby **ORDERED, DIRECTED** and **DECREED** that Defendant Smith's Motion to Suppress and Supplemental Motion to Suppress are **DENIED**.

BY THE COURT:

_____
Patrick T. Kiniry, Judge

COPIES TO:
- ☐ DEF.   ☐ C & F
- ☑ DA   ☐ SHERIFF
- ☑ ATTY.   ☑ OTHER
- ☐ PO   Mon' Atty. Madeira A.G. office
- ☐ PD
- ☐ JAIL
- ☐ JUDGE
- ☐ CA

11

FILED FOR RECORD
2020 MAY 21 A 9: 37
CLERK OF COURTS
CAMBRIA COUNTY, PA

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  : No. 1248-2019
        Plaintiff, :
         : Pre-Trial Motions
vs. :
         :
SHAKIR SMITH, :
        Defendant. :

FILED FOR RECORD 2020 JUN -9 P 3:34 CLERK OF COURTS CAMBRIA COUNTY, PA

## OPINION

**Kiniry, J.**, _9_ June, 2020. This matter comes before the Court as a result of Defendant Shakir Smith ("Smith") filing Pre-Trial Motions on February 10, 2020 that included a Motion in Limine concerning evidence and/or testimony that the Defendant requests be excluded at trial, a Motion for Sequestration of Witnesses, and a Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises of any Nature to Commonwealth Witnesses.. Defendant also filed a Supplemental Pre-Trial Motion in Limine on March 31, 2020 concerning a request to exclude evidence and/or testimony regarding the Investigative Report dated March 3, 2020 that contains photographs of the Defendant. Arguments on all Pre-Trial Motions were held on April 29, 2020. After reviewing the hearing transcript and all of the motions, the Court **DENIES** Defendant Smith's Pre-Trial Motion in Limine and **GRANTS** Defendant's Supplemental Pre-Trial Motion in Limine in part for the reasons that follow. The Commonwealth and the Defendant resolved the Motion for Sequestration of Witnesses and the Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises of any Nature to Commonwealth Witnesses by way of an agreement.

1

## FACTS AND PROCEDURAL HISTORY

This case arises out of the alleged solicited homicide of a confidential informant by the name of Carol Ashcom that occurred in Cambria County, Pennsylvania in 2015. Defendant is charged by Criminal Information filed on October 18, 2019 at the above captioned case number with Solicitation to Commit Murder. The Commonwealth avers that the Defendant was incarcerated at the time of the solicited homicide as a result of the Defendant's arrest for the drug sales made by the Defendant to Carol Ashcom, the confidential informant.

The Defendant has requested through the Pre-Trial Motion in Limine that the Commonwealth be excluded from entering into trial or referencing at trial six (6) items of evidence and/or testimony. The Defendant further requested through the Supplemental Pre-Trial Motion in Limine that the Court exclude the Commonwealth from entering into evidence at trial an additional item of evidence and/or testimony. The Court will address those requests in the order that they were made by the Defendant.

## DISCUSSION

### I. Pre-Trial Motion in Limine

a. The Defendant moves in limine to exclude his prior criminal record and/or prior bad acts. Defendant argues that it could paint him in a negative light in the eyes of the jury to know that he was incarcerated at the time of the alleged criminal act. The Commonwealth avers that it intends to introduce evidence of the Defendant's prior bad acts related to his incarceration at the time of the solicitation to prove motive and as a part of the history of the case. The Commonwealth argues that the evidence of the

Defendant's drug sales to the confidential informant and his arrest were the motives for the solicitation and the Defendant has allegedly admitted this to other individuals. The Commonwealth further argues that the Defendant's actions while incarcerated happened specifically because he was incarcerated due to the cooperation of the confidential informant whose death he allegedly solicited.

"Evidence is admissible if it is relevant – that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact – and its probative value outweighs the likelihood of unfair prejudice." *Commonwealth v. Boczkowski*, 557 Pa. 421 (2004). "Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character." *Commonwealth v. Horvath*, 781 A.2d 1243 (Pa. Super. 2001). Pennsylvania Rule of Evidence 404(b)(1) states that, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) further states, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident where the manner and

circumstances of two crimes are remarkably similar." *Commonwealth v. Kinard*, 95 A.3d 279 (Pa. Super. 2014).

"Evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. *Id*. "In order for other crimes evidence to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant, and a comparison of the crimes proffered must show a logical connection between them and the crime currently charged." *Commonwealth v. Arrington*, 624 Pa. 506 (2014).[1] An exception exists to the general inadmissibility of evidence of other crimes where there is a "striking similarity – or logical connection – between the proffered prior bad acts and underlying charged crime." *Commonwealth v. Hicks*, 638 Pa. 444 (2017). The Supreme Court of Pennsylvania has "consistently held that there [is] no abuse of discretion in allowing other crimes evidence in circumstances substantially similar to those presented here." *Commonwealth v. Elliot* 549 Pa. 132 (1997).

The Court finds that the probative value of the Defendant's prior criminal record and/or prior bad acts outweighs the likelihood of unfair prejudice to the Defendant. Evidence of the Defendant's prior criminal record and/or prior bad acts

---

[1] The *Arrington* case concerned the murder of Defendant Arrington's ex-girlfriend after she had him arrested for physical and emotional abuse and break-ins. There was no physical evidence linking Arrington to the murder and case was mainly circumstantial. The Commonwealth introduced evidence of other acts involving three of Arrington's girlfriends, as well as prior crimes against the victim herself. After he was found guilty, Arrington challenged the admissibility of the other acts on appeal and the Court held "the shared circumstances of Arrington's conduct during his other relationships proved a logical connection between his prior bad acts and the underlying charged crime. The evidence was not introduced to portray him as a habitual criminal with a propensity for violent behavior, but rather to establish that Arrington acted pursuant to a **common plan or scheme.**

4

would not be offered by the Commonwealth to show the Defendant's bad character, or his propensity for committing criminal acts, but to show his alleged motive and intent in the case at hand. The Court also finds that evidence of the Defendant's prior criminal record and/or prior bad acts will be offered to show a logical connection between previous crimes or bad acts and the crime that is currently charged. Therefore, the Court denies Defendant's request to exclude this testimony/evidence and finds that evidence relating to the Defendant's criminal record and/or prior bad acts falls within the purview of Pa.R.E. 404(b)(2).

b. Defendant moves in limine to exclude any reference to the homicide of Jarret Smith a/k/a "Chico" in August 2014 on the grounds that any reference to this incident that the Defendant has not been charged with would only confuse the jury and paint the Defendant in a negative light in the eyes of the jury. The Commonwealth avers, through letters and intercepted communications that "Chico" was also an informant. The Commonwealth argues that statements made by the Defendant concerning Chico's death are related to the solicitation of the death in the case at hand of the confidential informant because those statements reveal the Defendant's motive and plan to allegedly remove individuals believed to be confidential informants. The Commonwealth further argues that the Defendant's responses to the deaths of Chico and the confidential informant show the Defendant's consciousness of guilt.

"It is a critical function of the trial judge to insure that evidence is presented in a manner that is neither confusing nor misleading. The trial judge has broad discretion regarding the admission of potentially misleading or confusing evidence." *Sprague v.*

5

*Walter*, 441 Pa. Super. 1 (1995). The trial court decides this "depending upon the helpfulness of the testimony as compared to its potential to cause confusion." *Id.* As stated above, Pennsylvania Rule of Evidence 404(b)(1) states that, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) further states, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Other bad acts may provide a context within which to comprehend the event being litigated. A proper interpretation of events can be understood from prior or subsequent acts." *Commonwaelth v. Powell*, 956 A.2 406 (Pa. 2008). "Evidence of other crimes or acts may be admitted if such evidence proves a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others." Leonard Packel and Anne Bowen Poulin, PENNSYLVANIA EVIDENCE § 404–9(a) (2d ed.1999). "A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts." *Commonwealth v. Strong* 825 A.2d 658 (Pa. Super. 2003). "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." *Commonwealth v. Luktisch*, 451 Pa. Super. 500 (1996).[2]

The highly probative nature of this evidence clearly outweighs an undue prejudice arising from its admission. Prior bad acts are admissible to prove the history

---

[2] See *Commonwealth v. Smith* 431 Pa. Super. 91 (1993) holding that evidence of prior crimes was admissible to show a recurring sequence of acts by the defendant.

6

of the case and consciousness of guilt of Defendant Smith. *Commonwealth v. Flamer*, 53 A.3d 82 (Pa. Super. 2012).[3] The Commonwealth must be given the opportunity to show the Defendant's consciousness of guilt through admissible evidence. *Id*. As stated above, evidence of a crime or wrong doing may be admissible not to prove a person's character, but to prove motive, intent, or a common plan. A proper interpretation of the alleged events in this case can be understood from prior events, such as references to the homicide of Jarret Smith a/k/a "Chico." Evidence and/or testimony concerning Chico is relevant to aid the jury in understanding evidence that the Commonwealth intends to present at trial. Therefore, the Court finds that references to the homicide of Chico are relevant and admissible under Pa.R.E. 404(b)(2), and the Court denies the Defendant's request to exclude any reference to the homicide of Jarret Smith a/k/a/ Chico.

c. Defendant moves in limine to exclude any reference to Richard Agurs a/k/a "Noog." Defendant avers that evidence presented through discovery allegedly shows that Defendant and Mr. Agurs had a disagreement with one of the Defendant's sons and Mr. Agurs allegedly shot at them. Evidence also shows that Defendant allegedly told one of his sons during a recorded prison telephone conversation to "have no mercy" in regard to Mr. Agurs. Mr. Agurs was shot within ten days of that alleged conversation. Defendant argues that reference to this incident would only confuse the jury.

The Commonwealth argues that references to Richard Agurs a/k/a/ "Noog" are similar to references of the death of Chico, which will be offered to establish the

---

[3] See *Commonwealth v. Pestinikas*, 421 Pa. Super. 371 (1992) holding that evidence of consciousness of guilt is relevant to form a basis from which guilt can be inferred.

7

common plan or scheme that the Defendant set in motion. The Commonwealth argues that the comments made by the Defendant show an absence of mistake as to the requests he makes of his sons, nephews, and others and his intent that they comply with his requests.

Pennsylvania Rule of Evidence 406 states that, "evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." A custom, habit, or routine practice may be inferred from policy, practices or repeated actions, or it may be asserted by a witness with personal knowledge. *See* Honorable Mark I. Bernstein, Pennsylvania Rules of Evidence Volume I (2020). "Routine practice of an organization may be shown through evidence of specific instances." *Id.* "For evidence of habit to be admissible, the habit must have occurred with sufficient regularity to make it probable that it would be carried out in every instance or in most instances." *Commonwealth v. Harris*, 578 Pa. 377 (2004). A "special circumstance where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts." *Commonwealth v. Murphy*, 346 Pa. Super. 438 (1985).

Similar to above, the Court finds that this evidence will be presented to establish a common plan. Reference to Mr. Agurs also is admissible to prove a routine practice or habit that the Defendant allegedly followed. The Court finds that, conversations that referenced "Noog" are important to show the sequence of events of

8

how the Defendant allegedly made requests to others, such as his sons and nephews, and expected others to carry out those requests i.e. showing the Defendant's plan or scheme. Therefore, the Court denies the Defendant's request to exclude reference to Mr. Agurs a/k/a Noog.

d. Defendant moves in limine to exclude any reference to the Defendant's involvement in an alleged dog breeding operation, as well as any reference to the dog named "Rhino." In a recorded telephone conversation from the prison, Defendant allegedly spoke with two of his sons about the dog breeding operation, and a specific dog named Rhino. "Rhino" was allegedly not considered aggressive enough, causing one of the Defendant's sons to shoot or beat the dog to death. Defendant avers that the Commonwealth asserts that the term "Rhino" was used as a code word meaning to kill or seriously harm someone. Defendant argues that any reference to Rhino or the dog breeding operation is inflammatory and could result in an unfair trial.

The Commonwealth argues that the references to the Defendant raising dogs and the expectation the Defendant had of those dogs to be aggressive is a natural development of the case and is a material fact tending to show the Defendant's alleged expectations of his sons and nephews. The Commonwealth avers that references to "Rhino" as well as Rhino's death go to the Defendant's understanding, weight, and meaning he gives to that word to convey his desires regarding the death of the confidential informant. The Commonwealth further argues that without the testimonial evidence regarding Rhino, the use of the word has no meaning and excluding the word would result in significant confusion for the jury.

9

It is the duty of the Court to determine whether evidence of the above mentioned circumstances "[has] some relevance to the case and [is] not offered solely to inflame the jury or arouse prejudice against the defendant." *Commonwealth v. Lark*, 518 Pa. 290 (1988).[4] "Evidence will not be prohibited merely because it is harmful to the defendant." *Commonwealth v. Tyson*, 119 A.3d 353 (Pa. Super. 2015). The Court is not required to sanitize the trial to exclude unpleasant facts from the jury's consideration when those facts are relevant to the case. *Commonwealth v. Dillon*, 592 Pa. 351 (2007). "When examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence ... Jurors are presumed to follow the trial court's instructions." *Commonwealth v. Hairston*, 624 Pa. 143 (2014).

Reference to "Rhino" as a term or as the Defendant's alleged dog, or the Defendant's alleged dog breeding operation is relevant to the case as a whole to aid the jury in understanding the context of the case. If the Commonwealth introduces the letter from India Snyder to the Defendant, which contains reference to the term "Rhino," the jury would likely be confused as to the meaning of the word if the background of the word is excluded. The Court is not required to sanitize the trial to exclude unpleasant facts, such as the alleged death of the dog Rhino. Therefore, the Court finds that reference to the term Rhino is relevant and denies the Defendant's

---

[4] The Supreme Court of Pennsylvania held in *Lark* that the trial court did not abuse its discretion in permitting the challenged evidence of other threats and/or other arrests and criminal activity to be introduced. The Court stated, "not surprisingly, criminal defendants always wish to excise evidence of unpleasant and unpalatable circumstances surrounding a criminal offense from the Commonwealth's presentation at trial."

request to exclude such references. The Court will provide a cautionary instruction to the jury to ameliorate any prejudicial effect that this evidence/testimony causes.

e. Defendant moves in limine to exclude any reference to a letter the Defendant allegedly wrote to India Snyder in which he wrote, "I hate you. I swear I can't wait to see you dead." Defendant argues that this letter would only confuse the jury and paint the Defendant in a negative light in the eyes of the jury. The Commonwealth avers that the witness, India Snyder, testified regarding her fear of the Defendant and evidenced that fear by writing to the Defendant stating, "if your gonna Rhino me, then do it." The Commonwealth argues that the statements made to India Snyder provide probative evidence of the Defendant's habit, plan, and scheme in the manner in which the Defendant deals with individuals who cooperate with law enforcement. The Commonwealth argues that the Defendant made statements that he allegedly intended to kill India Snyder, and that these statements were made in the context of how he deals with individuals cooperating with law enforcement.

As previously stated, "it is a critical function of the trial judge to insure that evidence is presented in a manner that is neither confusing nor misleading. The trial judge has broad discretion regarding the admission of potentially misleading or confusing evidence." *Sprague v. Walter*, 441 Pa. Super. 1 (1995). The trial court decides this "depending upon the helpfulness of the testimony as compared to its potential to cause confusion." *Id.* "Evidence will not be prohibited merely because it is harmful to the defendant. [The] Court [is not required] to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the

11

issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Dillon*, 592 Pa. 351 (2007).[5] "Identity as to the charged crime may be proven with evidence of another crime where separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant." *Commonwealth v. Novasak*, 414 Pa. Super. 21 (1992). The Court finds that the helpfulness of the testimony concerning the letters the Defendant allegedly wrote to India Snyder, and her response to the Defendant's letters, outweighs any potential confusion to the jurors. Therefore, the Court denies the Defendant's request to exclude any reference to a letter the Defendant allegedly wrote to India Snyder.

f.  Defendant moves in limine to exclude any reference to the Defendant using the terms: "honkie," "white bitch," "nigaas," or any other terms that appear to be racially insensitive and compromise his ability to have a fair and impartial trial, assuming his jury will likely contain mostly Caucasian jurors. The Commonwealth argues that the Court is not required to sanitize the evidence that the Commonwealth presents at trial, especially when the words have been uttered by the Defendant himself. The Commonwealth also argues that it would be inappropriate for the Court to put the Defendant in a better position than he has put himself. The Court agrees. At the Hearing on the Pre-Trial Motions, counsel for Defense stated that the terms that are the issue of this motion were allegedly used in both letters and recorded prison phone calls made by the Defendant. Transcript of Hearing on Pretrial Motions, 04/29/20, p.

---

[5] The Pennsylvania Supreme Court has "upheld the admission of other crimes evidence, when relevant, even where the details of the other crime where extremely grotesque and highly prejudicial. *Id.*

12

46, ll. 21-24. The Court notes that the Defendant has provided no case law or precedent in support of this argument, and, as such, the Court denies this request made by the Defendant. The Court is not required to sanitize the trial or exclude any racial terms or curse words used by the Defendant if those are his own words he uses when he communicates.

## II. Motion for Sequestration of Witnesses

Defendant argues that some of the witnesses who he believes will testify against him at trial may have criminal records and/or pending criminal charges, resulting in those witnesses having different interests that could impact their testimonies. As such, Defendant requests that the Court sequester all witnesses testifying at the time of trial. In the Commonwealth's Answer to Defendant's Pre-Trial Motions, the Commonwealth stated that it has no objection to the sequestration of all civilian witnesses and law enforcement witnesses except for the lead investigators, including Agent Thomas Moore, Agent Ryan Caputo, Detective Mark Britton, and Officer Thomas Owens. At the Hearing on the Pre-Trial Motions, counsel for Defendant Smith stated that all parties are in agreement on the Motion for Sequestration, and that the Defendant understands the Commonwealth has a right to have their investigating officers present. Therefore, the Court finds that those four above mentioned law enforcement witnesses shall be the only witnesses not sequestered throughout the course of the trial. Transcript of Hearing on Pretrial Motions, 04/29/20, p. 48, ll. 12-15.

**III. Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises of Any Nature to Commonwealth Witnesses**

Defendant avers that the Commonwealth intends to call witnesses at trial with whom the Commonwealth may have entered into plea bargains or may have given preferential treatment to in return for their testimony in this case. Defendant requests the disclosure of the names of those witnesses, as well as a complete statement of the nature and extent of any plea bargains, promises, or preferential treatment, including but not limited to: (1) the full text of any written plea and/or immunity agreement, (2) the substance of all oral promises or benefits of any kind made to the witness by the prosecution or other agents of the Commonwealth, (3) records and/or receipts as to the payment of money or any other item of value, including but not limited to reimbursement for expenses, by any Commonwealth officer, agent, or employee in exchange for or in connection with the witnesses' testimony or participation, (4) any and all records of any commonwealth employee's receipt of any award, bonus or like item for, or as a result of, their work in this case, including but not limited to records of overtime pay received by such agents or officers in connection with their work for the Commonwealth, (5) any communication by the Commonwealth, its agents and representatives, to any federal and/or state parole board supervising the witness via probation or parole, (6) whether a witness has or had any interest in any property subject to a forfeiture proceeding, and any agreement or promise as to its disposition, and (7) any information as to privileges extended to any incarcerated witnesses due to their status as a Commonwealth witness, including but not limited to conjugal visits, phone privileges, extra visitation, or special housing.

The Commonwealth agreed in its Answer to Defendant's Pre-Trial Motions to provide the Defendant with requests (1), (2), (6), and (7). The Commonwealth agreed pursuant to request (3) to provide the Defendant with the requested information, except for the records or receipts for expense reimbursements in conjunction with appearance at grand jury. The Commonwealth also agreed pursuant to request (5) to provide the Defendant with the requested information, except for communications regarding non-substantive matters, if any. The Commonwealth denied request (4) as not relevant or probative. At the Hearing on the Pre-Trial Motions, the following exchange took place on the record,

Attorney Burns: Basically what I'm looking for, and I think we're in agreement, you provide me with – the Commonwealth will provide me any preferential treatment that any of the witnesses were given, if there was any, just to show what – you know, so I can question them on cross.

Attorney Madeira: I concur, Your Honor. I think the only cause for pause, and I think we talked about it in our --.

Attorney Burns: We did. I'm not asking for it.

Attorney Madeira: And that was the records as it relates to overtime for officers. I also note in my response that records are received for expense reimbursement in conjunction with the appearance at the grand jury. No one is paid to come to grand jury. They're subpoenaed. They've got to be there. We simply pay for a meal perhaps because we have them there, but that's not material that I think is appropriate to turn over.

The Court: Okay. Do you understand all that, Mr. Burns?

Attorney Burns: I understand.

The Court: And you're in agreement with that?

Attorney Burns: I'm in agreement with that, Your Honor.

15

<u>Transcript of Hearing on Pretrial Motions</u>, 04/29/20, p. 49, ll. 1-24. Therefore, based upon the above exchange at the Hearing on Pre-Trial Motions, the Court finds that the Commonwealth and the Defendant have agreed to which information and material the Commonwealth will provide to the Defendant.

## IV. Supplemental Pre-Trial Motion in Limine

The Defendant moves in limine to exclude evidence and/or testimony relating to the entire Investigative Report dated March 3, 2020. Defendant states that the Report contains booking information and photographs of the Defendant from 2005 to 2019. The photographs are mug shots of the Defendant that illustrate a number of the Defendant's tattoos which the Defendant argues could be construed by a jury to be of a violent nature. For instance, one of the tattoos reads "rat killer," and another reads "live by the gun, die by the gun." Defendant avers that it is the Commonwealth's intent to paint the Defendant in a negative light in the eyes of the jury, and that the photographs are "nearly 20 years old."

The Commonwealth argues that the photographs of the Defendant's tattoos are relevant and probative evidence of the Defendant's common plan and scheme as well as his habit of dealing with confidential informants. The Commonwealth argues that it is going to present testimony from witnesses that the Defendant has admitted that those who cooperate with the police (those he refers to as "rats") deserve to die. Further, the Commonwealth argues that it intends to present testimony of the defendant discussing the use of guns as a means of intimidation and threats, and that he has trained his family members to use and carry guns.

All relevant evidence is admissible, except as otherwise provided by law. Pa.R.E. 402. Relevant evidence may be excluded by operation of constitutional law, by statute, or by the Pennsylvania Rules of Evidence if the relevant evidence will render a trial unfair. Pennsylvania Rule of Evidence 403 states that, "The Court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When relevant evidence is challenged under Pa.R.E. 403, the extent of its probative value must be considered and balanced against "the possibilities of inviting resolution on an improper basis or wasting courtroom resources, including judicial time and juror patience, and against the danger of unfair prejudice or confusion." *Sprague v. Walter*, 441 Pa. Super. 1 (1995).

The Court finds that because of the age of these photographs of the Defendant's tattoos, some of which have been covered up, introduction of these photographs into evidence and to the jury could result in misleading the jury and unfair prejudice. Therefore, the Court grants the Defendant's request to exclude evidence and/or testimony relating to the photographs in the Investigative Report dated March 3, 2020.

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  : No. 1248-2019
      Plaintiff,             :

                    : Pre-Trial Motions.

    vs.               :

                    :

SHAKIR SMITH,         :

      Defendant.        :

## ORDER

**AND NOW**, on this __9__ day of June, 2020, after reviewing Defendant Smith's Pre-Trial Motions, Supplemental Pre-Trial Motion, the Commonwealth's Answer to Defendant's Pre-Trial Motions and Supplemental Pre-Trial Motion, and the arguments made by counsel at the Pre-Trial Motions Hearing, it is hereby **ORDERED, DIRECTED** and **DECREED** that Defendant Smith's Pre-Trial Motions in Limine filed on February 10, 2020 are **DENIED,** Defendant's Supplemental Pre-Trial Motion in Limine is **GRANTED** in part, and the Court finds that an agreement exists between all of the parties concerning the Defendant's Motion for Sequestration of Witnesses, and the Defendant's Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises of any Nature to commonwealth Witnesses.

BY THE COURT:

_____
Patrick T. Kiniry, Judge

COPIES TO:
- ☐ DEF.   ☐ C & F
- ☑ DA    ☐ SHERIFF
- ☑ ATTY.  ☑ OTHER
- ☐ PO    Mail Atty Madeira Ab.
- ☐ PD    _____
- ☐ JAIL   _____
- ☐ JUDGE _____
- ☐ CA    _____

18

**IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA,  : No. 1248-2019 / 562-2020
      Plaintiff, :
           : Pre-Trial Motions
vs. :
           :
SHAKIR SMITH, :
      Defendant. :

## OPINION

**Kiniry, J.,** _18_ September, 2020. This matter comes before the Court as a result of Defendant Shakir Smith ("Smith") filing Pre-Trial Motions on August 3, 2020, that included a Motion for Recusal, a Motion for Change of Venue, and a Motion for Bill of Particulars. The Court notes that Defendant Smith had previously filed a Motion for Bill of Particulars on May 4, 2020, which is also ripe for disposition. Defendant Smith also filed Pre-Trial Motions in Limine on August 6, 2020, concerning evidence and/or testimony that the Defendant requests be excluded at trial. A hearing was held on August 27, 2020. After reviewing the Defendant's Motions, the Commonwealth's Answers, and the transcript from the hearing, the Court **DENIES** Defendant Smith's Motion for Recusal, **DEFERS** until the time of Jury Selection on Defendant Smith's Motion for Change of Venue, **DENIES** Defendant's Motions for Bills of Particulars dated May 4, 2020, and August 3, 2020, and **DENIES** Defendant Smith's Motions in Limine for the reasons that follow. The Commonwealth and the Defendant resolved the Defendant's Motion in Limine to preclude a series of photographs of the body of Jarrett Smith.

## FACTS AND PROCEDURAL HISTORY

This case arises out of the alleged solicited homicide of a confidential informant by the name of Carol Ashcom that occurred in Cambria County, Pennsylvania in 2015. Defendant is

1

charged by Criminal Information filed on October 18, 2019 at case number 1248-2019 with Solicitation to Commit Murder and by Criminal Information filed on June 11, 2020 at case number 0562-2020 with Murder of the First Degree.[1] The Commonwealth avers that the Defendant was incarcerated at the time of the solicited homicide as a result of the Defendant's arrest for the drug sales made by the Defendant to Carol Ashcom, the confidential informant.

## DISCUSSION

### I. Pre-Trial Motions filed August 3, 2020

### A. Motion for Recusal

Counsel for Defendant argues that the Defendant made Counsel aware on July 30, 2020, that Defendant believes that the Court may have a relative who is employed by the Pennsylvania Attorney General's Office. Defendant requests that if the Court does have a relative who is employed by the Pennsylvania Attorney General's Office, that the Court shall recuse itself from this case, so that there is no appearance of a conflict of interest. Defendant cites to Pennsylvania Judicial Canon (3)(C)(1) in support of his position, which states, "Disqualification. Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

"The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Rizzo v. Haines*, 520 Pa. 484 (1989). "As

---

[1] On July 7, 2020 the Commonwealth filed a Motion to Consolidate the two cases. On July 8, 2020 the Court granted the Commonwealth's Motion and consolidated the cases for trial.

2

a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged." *Commonwealth v. Travaglia*, 541 Pa. 108 (1995). "In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make." *Goodheart v. Casey*, 523 Pa. 188 (1989). "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Id.* The Supreme Court of Pennsylvania has stated that, "in reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair, and competent." *Reilly v. SEPTA*, 507 Pa. 204 (1985).

"It is incumbent upon the proponent of a disqualification motion to allege facts tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent. The propriety of this decision is grounded in abuse of discretion and is preserved as any assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause. If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. If so, the alleged disqualifying factors of the trial judge become moot." *Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority*, 507 Pa. 204 (1985). "Due

consideration should be given by him [judge] to the fact that the administration of justice should be beyond the appearance of unfairness. *In re Crawford's Estate*, 307 Pa. 102 (1931).

"The test for an appearance of partiality is whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (U.S. Ct. App. 1985). A trial judge shall recuse himself when "a significant minority of the law community could reasonably question the court's impartiality." *Commonwealth v. Darush*, 459 A.2d 727 (1983).

Attorney Michael Madeira explained to the Court at the Hearing on the Motion for Recusal that,

> This deputy general in the Pittsburgh office does not only not -- I don't know her -- not only does she not have access to my case, not only have I never discussed this with her, until you related that to me, Your Honor, I wouldn't have known that she was related to you. Not only that, I also -- we're sworn to secrecy. These are items that we cannot and do not share with others. So I believe there is no reason for you to recuse yourself simply because of this relationship.[2]

Transcript of Hearing on Pretrial Motions, 08/27/20, p. 12, ll. 16-25. The Court finds that, in regard to the standard for recusal, the Defendant has not met his burden of producing evidence to establish that any bias, prejudice, or unfairness exists in this case that would raise a substantial doubt as to the Court's ability to preside impartially. The Defendant has not alleged any facts tending to show bias, interest, or other disqualifying events, aside from his general request for the Court to recuse itself.

---

[2] The deputy referred to is a step-daughter of the Judge. The deputy is a recent hire in the Attorney General's Office with whom the Court has not discussed this case.

First, the Court must subjectively determine whether it can hand the case in a fair and impartial manner. The Court has made a conscious determination of its ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The Court finds that it has the ability to assess the case in an impartial manner. Second, the Court must objectively determine whether its impartiality might reasonably be questioned. The Court has also considered whether continued involvement in the case creates an appearance of impropriety that would tend to undermine public confidence in the judiciary. The Court finds that it does not. Therefore, the Court denies Defendant's Motion for Recusal.

### B. Motion for Change of Venue and/or Out of County Jury

Defendant argues that due to extensive pre-trial publicity he will not be able to have a fair and impartial jury selected for his trial. At the hearing on the Pre-Trial Motions, Defendant provided the Court with articles from the Johnstown Tribune-Democrat and WJAC-TV, which references the Defendant's current case. Defendant argued that there has been extensive pre-trial publicity in this case, and that the case has received widespread coverage in the newspaper, as well as other print media and social media. Defendant also argues that on August 1, 2020, the Johnstown Tribune Democrat editorial board in its weekly "Laurel and Barb" section gave Defendant a "Barb" for exercising his constitutional right in pleading not guilty at his arraignment the previous week. Defendant argues that, due to the considerable amount of publicity, the local jury pool has been tainted in regard to his case.

The Commonwealth argues that the reporting in this case is not slanted and simply reports what the Defendant is accused of. The Commonwealth also avers that the publicity does not reveal the Defendant's prior criminal record. Lastly, the Commonwealth argues that the

Barb in the Johnstown Tribune Democrat specifically says, "Shakir Mosi Smith of Johnstown, accused of ordering the killing of a confidential informant, refused to leave his cell at the Somerset County Jail to attend the videoconference where he was arraigned on the first degree murder charge. Judge Tulowitzki arraigned Smith in absentia while the court-appointed attorney entered a not guilty plea on his behalf." Therefore, the Commonwealth argues that the Barb is not that the Defendant availed himself of his constitutional right to plead not guilty, as Defense counsel argued.

Pennsylvania Rule of Criminal Procedure 584(A) provides that,

> All motions for change of venue or for change of venire shall be made to the court in which the case is currently pending. Venue or venire may be changed by that court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending.

"The general rule is that a change of venue or venire is committed to the sound discretion of the trial court." *Commonwealth v. Patterson*, 392 Pa. Super. 331 (1990). "A defendant must demonstrate that pre-trial publicity resulted in actual prejudice preventing the impaneling of an impartial jury." *Commonwealth v. Faulkner*, 528 Pa. 57 (1991). The Supreme Court of Pennsylvania has noted that,

> In order for pre-trial publicity to be presumptively prejudicial, a defendant must prove two points: first, either that (a) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual or objective; (b) the publicity reveals that the accused's prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; or (c) the publicity is derived from police and prosecuting officers reports; and, secondly, that the publicity must be so extensive, sustained, and pervasive without sufficient time between the publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated.

*Commonwealth v. Rucci*, 543 Pa. 261 (1996). The Court defers on the Defendant's Motion for Change of Venue until the time of jury selection, upon which time the Court can sufficiently

6

ascertain whether the jury pool has been tainted by the pre-trial publicity. At that time, the Defendant has the right to re-raise his Motion for Change of Venue if necessary.

## II. Motion for Bill of Particulars

The Court first notes that the Defendant filed a Motion for Bill of Particulars on May 4, 2020, and also on August 3, 2020. The Motion for Bill of Particulars filed May 4, 2020 relates to the charge of Criminal Solicitation - Murder of the First Degree, and the Motion for Bill of Particulars filed August 3, 2020 relates to the charge of Murder of the First Degree. The Defendant requests, through both Motions, the following particulars in regards to the charges which have been filed against him: the date(s), time(s) and location(s) of each act in furtherance of the charged offense and the nature of such act. The Defendant argues that, in order to defend against the charges, he is entitled to know which crime he committed and the specific date that crime was to have allegedly occurred. Defendant further argues that, if he were to be prosecuted again for activity that occurred in the same broad time period encompassed by the charges, he could not impose the defense of double jeopardy unless it were shown which activity formed the basis for the counts on which he was prosecuted.

The Commonwealth argues that

> As to the request for specificity as to the dates, the times and the locations of the acts completely ignores the fact that the Defendant has received a plethora of letters that are dated; the calls, which are made clear when calls were made, when they were received; and admissions made by the defendant, again, with regards to when he made them and to whom he made them from the time of his arrest and incarceration in Cambria County until present."[3]

---

[3] The Defendant was made aware during each telephone call to or from the jail that the call was being recorded. Further, a wiretap was conducted at the Cambria County Prison visitor's booth for visits occurring inside of the prison.

<u>Transcript of Hearing on Pretrial Motions</u>, 08/27/20, p. 21, ll. 13-20. "A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations." *Commonwealth v. Simione*, 447 Pa. 473 (1972). "It is not a substitute for discovery and the Commonwealth's evidence is not a proper subject to which a bill of particulars may be directed." *Commonwealth v. Davis*, 470 Pa. 193 (1977). It is appropriate for a Court to deny a Motion for Bill of Particulars when the information requested by the Defendant is set forth in the complaint, the information, and discovery, and the Commonwealth has not violated discovery obligations. *Commonwealth v. Mercado*, 649 A.2d 946 (Pa. Super. 1996). *See also Commonwealth v. Orlowski*, 481 A.2d 952 (Pa. Super. 1984).[4]

The Commonwealth has provided dates of letters and dates of conversations to the Defendant that the Defendant was a part of, the identity of witnesses and their statements that will testify against the Defendant, and extensive discovery regarding the actions of the defendant, which provided dates, times, and locations of the individual and ongoing acts by the Defendant relating to the crimes charged. Further, the Court agrees with the Commonwealth that it is not the Commonwealth's, the Defendant's, or the Court's responsibility to anticipate hypothetical charges that may be filed against the Defendant in the future for purposes of the Defendant's double jeopardy argument.

Additionally, at the time of the Pre-Trial Motions Hearing, Attorney Burns made the Court aware that the Defendant did not have the necessary electronic access at the Somerset

---

[4] Finding that the "trial court's denial of defendant's motion for a bill of particulars in his prosecution for first-degree murder, attempted murder, criminal conspiracy, and criminal solicitation was not an abuse of discretion, where defendant, even in absence of information requested, had benefit of over 300 pages of transcript from his preliminary hearings, as well as extensive mandatory and discretionary discovery material."

County Jail to view the discovery materials given to him by the Commonwealth. The Commonwealth averred that the Defendant was given discovery disks that contain telephone conversations and copies of the letters. The Court issued an order on August 31, 2020 directing the Somerset County Jail to provide Defendant with the necessary means to be able to view the discovery electronically on the provided disks.[5] Therefore, the Court denies Defendant's Motion for Bill of Particulars dated May 4, 2020, and denies Defendant's Motion for Bill of Particulars dated August 3, 2020.

## III.     Pre-Trial Motions filed August 6, 2020

### A.     Motion in Limine to Exclude

Defendant requests that the Court exclude from trial a recording of an interview with Jesse Maga, an inmate who was incarcerated with the Defendant at the Cambria County Prison on or about 2016. The interview is from June 3, 2020. Defendant argues that Mr. Maga made numerous prejudicial statements and inflammatory comments against the Defendant which outweigh the probative value of the statements and comments. Specifically, the Defendant objects to the following comments: (1) that the Defendant "ran an extortion empire," (2) that the Defendant was a member of the Bloods street gang, (3) that the Defendant said he would torture potential Commonwealth witness India Snyder with rats for days, (4) that Defendant referred to India Snyder as a "bitch," and (5) that Mr. Maga stated that Defendant was a "killer." Defendant argues that all of these statements and comments are highly prejudicial,

---

[5] On September 2, 2020, the Court received confirmation via email from Attorney Burns that the deputy warden of the Somerset County Jail provided Defendant Smith with a flash drive so that Defendant is able to review the discovery from the Commonwealth.

inflammatory, and that the Defendant is not charged with crimes related to any of these statements or comments.

The Commonwealth avers that it intends to introduce evidence and statements of Jesse Maga that consist of the statements, admissions, and actions of the Defendant while in the presence of Mr. Maga. The Commonwealth argues that it is not seeking the opinion of Mr. Maga, but rather statements made by the Defendant to Mr. Maga that show motive, intent, preparation, consciousness of guilt, and acts in accordance with the routine habit and practice of the Defendant. The Commonwealth avers that the Defendant admitted to Mr. Maga that the Defendant had Carol Ashcom killed because she was an informant regarding the Defendant's drug activities. The Commonwealth argues that such a statement is an admission of guilt that is probative to the Defendant's motive, intent, plan, and scheme. The Commonwealth also argues that the Defendant is a self-identified member of the Bloods gang and that admissions to that membership through letters and telephone calls to be introduced at trial form the natural development of the facts in the case. Lastly, the Commonwealth argues that the Defendant's statement to Mr. Maga that India Snyder is "next" and that Ms. Snyder "should have learned her lesson from what happened to Carol Ashcom" is consistent with the Defendant's practice and habit of dealing with informants.

"Evidence is admissible if it is relevant – that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact – and its probative value outweighs the likelihood of unfair prejudice." *Commonwealth v. Boczkowski*, 557 Pa. 421 (2004). "Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime solely to show his bad

character and his propensity for committing criminal acts. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character." *Commonwealth v. Horvath*, 781 A.2d 1243 (Pa. Super. 2001). Pennsylvania Rule of Evidence 404(b)(1) states that, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) further states, "this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

"Evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. *Id.* "In order for other crimes evidence to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant, and a comparison of the crimes proffered must show a logical connection between them and the crime currently charged." *Commonwealth v. Arrington*, 624 Pa. 506 (2014). An exception exists to the general inadmissibility of evidence of other crimes where there is a "striking similarity – or logical connection – between the proffered prior bad acts and underlying charged crime." *Commonwealth v. Hicks*, 638 Pa. 444 (2017).

Other bad acts may provide a context within which to comprehend the event being litigated. A proper interpretation of events can be understood from prior or subsequent acts. *Commonwaelth v. Powell*, 956 A.2 406 (Pa. 2008). "Evidence of other crimes or acts may be admitted if such evidence proves a common scheme, plan or design embracing commission of

11

two or more crimes so related to each other that proof of one tends to prove the others." Leonard Packel and Anne Bowen Poulin, PENNSYLVANIA EVIDENCE § 404–9(a) (2d ed.1999). "A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts." *Commonwealth v. Strong* 825 A.2d 658 (Pa. Super. 2003). "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." *Commonwealth v. Luktisch*, 451 Pa. Super. 500 (1996).

Pennsylvania Rule of Evidence 406 states that, "evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." A custom, habit, or routine practice may be inferred from police, practices or repeated actions, or it may be asserted by a witness with personal knowledge. *See* Honorable Mark I. Bernstein, Pennsylvania Rules of Evidence Volume I (2020). "Routine practice of an organization may be shown through evidence of specific instances." *Id.* "For evidence of habit to be admissible, the habit must have occurred with sufficient regularity to make it probable that it would be carried out in every instance or in most instances." *Commonwealth v. Harris*, 578 Pa. 377 (2004). "There must be evidence of continuous and systematic conduct." *Commonwealth v. Sanchez*, 848 A.2d 977 (Pa. Super. 2004). A "special circumstance where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts." *Commonwealth v. Murphy*, 346 Pa. Super. 438 (1985).

12

"Evidence will not be prohibited merely because it is harmful to the defendant. [The] Court [is not required] to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Dillon*, 592 Pa. 351 (2007).

The Defendant's admission to Mr. Maga that he had the confidential informant killed because she was a confidential informant is an admission of guilt that is probative to the Defendant's motive, intent, plan, or scheme. Evidence and/or testimony concerning prior bad acts will be offered to show a logical connection between previous crimes or bad acts and the crime that is currently charged. The highly probative nature of this evidence clearly outweighs an undue prejudice arising from its admission. Prior bad acts are admissible to prove the history of the case and consciousness of guilt of Defendant Smith. *Commonwealth v. Flamer*, 53 A.3d 82 (Pa. Super. 2012). The Commonwealth must be given the opportunity to show the Defendant's consciousness of guilt through admissible evidence. A proper interpretation of the alleged events in this case can be understood from prior events, such as references to Defendant's dealings with those informing against him. The Court finds that such evidence is relevant and is not admissible to show the Defendant's bad character or propensity for committing criminal acts, but is admissible for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident.. The probative value of the evidence and/or testimony that the Commonwealth intends to set forth from Mr. Maga outweighs the prejudicial effect of this evidence to the Defendant. Evidence and/or testimony concerning the Defendant's habit or routine practice for dealing with

13

confidential informants is admissible under Pennsylvania Rule of Evidence 406 and may be shown through specific instances. This testimony and/or evidence is important to show the sequence of events of how the Defendant allegedly made requests to others, such as his nephews and sons, and expected others to carry out those requests. Therefore, the Court denies Defendant's Motion in Limine to exclude the recording of an interview with Jesse Maga.

### B. Motion in Limine to Exclude

Defendant requests that the court exclude from trial a recording of an interview with Shawn Hall, an inmate who was incarcerated with the Defendant at the Somerset County Jail sometime within the past year. The interview is from April 2, 2020. Defendant argues that Mr. Hall stated in his interview that the Defendant told him the Defendant was going to have India Snyder killed, and that one of his sons had driven past Ms. Snyder's house. Defendant argues again that he is not on trial for making any alleged threats toward Ms. Snyder, and that the introduction of such a comment would prejudice the Defendant in the eyes of the jury.

The Commonwealth argues that the statements made by the Defendant to Shawn Hall show consciousness of guilt, acts in accordance with the routine habit and practice of the defendant, as well as his motive, intent, preparation, common plan or scheme. Further, the Commonwealth argues that the statements to Mr. Hall reveal the Defendant's ongoing motive and plan to remove the individuals he knew or believed to be informants in the Defendant's case.

All relevant evidence is admissible, except as otherwise provided by law. Pa.R.E. 402. Pennsylvania Rule of Evidence 403 states that "the Court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When relevant evidence is challenged under Pa.R.E. 403, the extent of its probative value must be considered, and balanced against "the possibilities of inviting resolution on an improper basis or wasting courtroom resources, including judicial time and juror patience, and against the danger of unfair prejudice or confusion." *Sprague v. Walter*, 441 Pa. Super. 1 (1995).

"Evidence will not be prohibited merely because it is harmful to the defendant. [The] Court [is not required] to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Dillon*, 592 Pa. 351 (2007).

At the hearing on the Pre-Trial Motions, in regard to this Motion to exclude the interview of Mr. Hall, Attorney Madeira for the Commonwealth stated,

> Again, we're talking about evidence that counsel just used the expression, we're painting the defendant in a particular way. **The amazing thing about this is the defendant is the one providing the paint.** He is the one that is making the statements to, in this instance, Mr. Hall that show a consciousness of guilt when he says, I was going to do the same thing to India Snyder except the Commonwealth has cameras on our home. He makes this admission to Mr. Hall after he's been arrested for this crime. He knows we're doing this and he's still telling individuals like Mr. Hall, this is what I did and I would have had her killed the same way had my -- strangely enough, it sounds very similar to his conversation with Lisa in an earlier call with the defendant when he says, make sure you drive, one of my sons, past Carol Ashcom's house. Here he's saying the exact same thing. What he intended to do, what he had done in preparing for this.

Transcript of Hearing on Pretrial Motions, 08/27/20, p. 10, ll. 2-18. The Court finds that the probative value of the Defendant's threats he allegedly made toward India

15

Snyder, and relayed to Mr. Hall, outweighs the likelihood of unfair prejudice to the Defendant and are helpful to understanding the context of the testimony and/or letters that the Commonwealth is permitted to place into evidence at trial concerning this witness and the way in which Defendant allegedly deals with confidential informants. Further, Court agrees that Mr. Smith is "providing the paint" in reference to the Defendant being painted in a negative light to the jury. As discussed above, the Court is not required to sanitize the trial or exclude any terms or curse words used by the Defendant if those are his own words he uses when he communicates. It is not the responsibility of the Court to sensor the negative image in which the Defendant voluntarily paints himself in. Therefore, the Court denies Defendant's Motion in Limine to exclude the recording of an interview with Mr. Hall.

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    : No.  1248-2019 / 562-2020
        Plaintiff,                      :

                                 : Pre-Trial Motions

    vs.                               :

                               :

SHAKIR SMITH,                         :

           Defendant.             :

## ORDER

**AND NOW**, on this _18th_ day of September, 2020, after reviewing Defendant Smith's Motion for Bill of Particulars filed May 4, 2020, Pre-Trial Motions filed August 3, 2020, Pre-Trial Motions in Limine filed August 6, 2020, the Commonwealth's Responses to those Motions, and the transcript from the hearing on those Motions, it is hereby **ORDERED, DIRECTED,** and **DECREED** that Defendant Smith's Motion for Bill of Particulars filed May 4, 2020 is **DENIED,** Defendant's Pre-Trial Motion for Recusal filed August 3, 2020, is **DENIED,** the Court **DEFERS** in ruling on Defendant's Motion for Change of Venue filed August 3, 2020, Defendant's Motion for Bill of Particulars filed August 3, 2020 is **DENIED,** and Defendant's Pre-Trial Motions in Limine filed August 6, 2020 are **DENIED.**

BY THE COURT:

COPIES TO:
☐ DEF.   ☐ C & F
☑ DA     ☐ SHERIFF
☐ ATTY  ☑ OTHER _Attorney General/DC_
☐ PD
☐ JAIL
☐ JUDGE
☐ CA

Patrick T. Kiniry, Judge

**IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA,     :  No.  1248-2019 / 562-2020
       Plaintiff,                       :

                            :  Post-Sentence Motions
   vs.                       :
                            :

SHAKIR SMITH,               :
       Defendant.           :

## OPINION

**Kiniry, J.,** _24_ February, 2021. This matter comes before the Court as a result of Defendant Shakir Smith ("Smith") filing Post-Sentence Motions on October 28, 2020, that included a Motion for Judgment of Acquittal, a Motion for New Trial based upon the Court's denial of Defendant's Motion in Limine regarding the Commonwealth's introduction of prior bad acts, a Motion for New Trial based upon the Court's denial of Defendant's Pre-Trial Motions to Suppress, and a Motion for New Trial based upon the Court's denial of the Defendant's Motions for Bill of Particulars. Defendant filed a Brief in Support of his Post-Sentence Motions on January 19, 2021. The Commonwealth filed an Answer to Defendant's Post-Sentence Motions on January 28, 2021. A hearing was held on Defendant's Post-Sentence Motions on January 26, 2021 and the Motions are now ripe for disposition.

## FACTUAL BACKGROUND

This case arises out of the solicited homicide of a confidential informant by the name of Carol Ashcom that occurred in Cambria County, Pennsylvania in 2015. Defendant Smith was charged by criminal information filed on October 18, 2019 at case number 1248-2019 as a result of the events that occurred between June 2014 and March 11, 2015 with Solicitation to Commit Murder. Defendant Smith was also charged by criminal information filed on June

7, 2020 at case number 0562-2020 as a result of the events that occurred on or about March 10 through March 11, 2015 with Murder of the First Degree as an Accomplice.[1] Testimony at trial set forth that a member of the "Lynch Mob," made up of the Defendant's sons and nephews, was allegedly the shooter in this case. The Court consolidated the two cases for purposes of trial on July 8, 2020. The Commonwealth averred that the Defendant was incarcerated at the time of the solicited homicide as a result of the Defendant's arrest for the drug sales made by the Defendant to Carol Ashcom, the confidential informant. A jury trial was held in this case beginning on September 28, 2020 through October 1, 2020. Defendant Smith was found guilty of both charges. Subsequently, Defendant filed the Post-Sentence Motions at issue in this case. Smith raises four issues for consideration.

## DISCUSSION

I. **MOTION FOR JUDGMENT OF ACQUITTAL – LACK OF WEIGHT OF EVIDENCE AND INSUFFICIENCY OF THE EVIDENCE.**

### A. Lack of Weight of Evidence

Defendant Smith argues that the Commonwealth failed to meet its burden beyond a reasonable doubt to warrant a conviction on both charges of Solicitation to Commit Murder and Murder in the First Degree as an Accomplice. Defendant avers that the evidence was insufficient to warrant a conviction, and that the weight of the evidence was against a conviction as well. Defendant also avers that the murder of the confidential informant remains unsolved, that the Commonwealth failed to produce the actual shooter of the confidential

---

[1] An individual is an accomplice to an offense if the individual acted with the intent of promoting or facilitating the commission of an offence and agrees, aids, or attempts to aid such other person in either planning or committing that offense

informant, and that no evidence was presented that the Defendant specifically ordered anyone to kill the confidential informant.

The Commonwealth argues that the Defendant provides no legal authority or precedent for his position that the Commonwealth must produce the individual identified as the shooter. The Commonwealth avers that a conviction for solicitation does not require the death of the individual against whom the solicitation is sought, and that a conviction for murder as an accomplice does not require the arrest or conviction of the principal in the murder. Further, the Commonwealth argues that it did produce evidence through testimony at trial of the identity of the actual shooter, as the Defendant confessed to others the identity of the shooter in the death of the victim.

The Pennsylvania Superior Court's standard of review for a challenge to sufficiency of the evidence is as follows:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa. Super. 2007). "The test of the sufficiency of the evidence in a criminal case is whether, viewing the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences

in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the crime charged beyond a reasonable doubt." *Commonwealth v. Carter*, 478 A.2d 1286, 1288 (Pa. Super. 1984).

"First-degree murder is an intentional killing, i.e. a willful, deliberate and premeditated killing." 18 Pa.C.S. Section 2502(a). "In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and specific intent to kill." *Commonwealth v. Smith*, 604 Pa. 126 (2009). "It is well established that an accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Commonwealth v. Spotz*, 552 (Pa. 499)(1998). "An individual may be held criminally liable for the acts of another, including first-degree murder, as an accomplice. In order to sustain a conviction based on accomplice liability, the Commonwealth must demonstrate that an individual acted with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Id.* "Whether an accomplice possessed the same intent to kill as his co-conspirator may be inferred from words, conduct, the attendant circumstances including the actions taken after the killing and all reasonable inferences that follow from them." *Commonwealth v. Bachert*, 499 Pa. 398 (1982).

The following exchange took place on the record during direct examination of India Snyder:

> Attorney Madeira: And once he [Defendant Smith] found out who the CI was, then what was of particular interest to him? In

your conversations with him, in letters, what was his particular interest? Now he knows it's Carol Ashcom.

India Snyder: Find out where she lives.

Attorney Madeira: What would be the reason for that?

India Snyder: Because if she's not around to testify, then he has no case.

Attorney Madeira: If she's not around?

India Snyder: Yes.

Attorney Madeira: Okay. You're implying something, but I'm asking you directly. Why would she not be around?

India Snyder: Because she'd be dead.

Attorney Madeira: And who – who would do that? Who would kill her?

India Snyder: Who would kill her? I don't know who would kill her, but I know who wanted her dead.

Attorney Madeira: Who wanted her dead?

India Snyder: Shakir.

Attorney Madeira: And, again, you know that from letters. You know that from conversations with him. Is that right?

India Snyder: Yes.

*Transcript of Jury Trial,* 9/28/20, p. 122-123, ll. 11-25 and 1-7. Ms. Snyder further stated that she and the "kids" (the lynch mob members), would get together to have a "party" and discuss the letters that Ms. Snyder and the others would receive from the Defendant while incarcerated. Ms. Snyder testified that the letters would contain instructions and when the letters were put together then "that would be the plan." In this case, Ms. Snyder testified that

the plan was "Carol Ashcom being dead." *Id.* at p.124, ll. 10-12. Further, Ms. Snyder testified that, although the letters did not use the words "kill Carol Ashcom," the Defendant had taught her and the kids how to speak in code. Ms. Snyder further testified in regard to how the Defendant feels about "rats" and snitches, stating that "he doesn't like them, and rats must die." *Id.* at p. 156 ll. 5. Ms. Snyder subsequently testified concerning a letter she received from the Defendant stating as follows: "I'm not doing no six to 15. She (Carol Ashcom) gotta go. She killing me. I'm mad as hell. Please throw this shit out. My whole defense is shot from you keeping them letters. This shit – this shit ugly, babe." *Id.* at p. 182 ll. 4-7. Lastly, Ms. Snyder testified that she had heard the Defendant say to "the boys" (the lynch mob) "do it right; we can kill and get away with it." *Id.* at p. 188 ll. 3-5.

On the second day of the trial, Jesse Maga testified that he met the Defendant while in prison and the first time he and the Defendant ever had a conversation it was concerning "rats" or people that "tell on people." Mr. Maga testified that he said to Mr. Smith "nobody does nothing about it" and that Mr. Smith said in response, "I do" and "yeah, people do do shit about it." *Transcript of Jury Trial*, 9/29/20, p. 78-79, ll. 17-21 and 2-3. Mr. Maga later testified that when he discussed Carol Ashcom further with the Defendant after seeing what happened to Carol on the news, the following comments were made: "I [Mr. Maga] said, no, what happened? You know what I'm saying. He said, the bitch got marked. I said, why? I said, who did it? I said, what did you do, did you mark her out? He said, no, I didn't do shit. He said, my family had that – you know, my family isn't going to let that shit happen to me. I said, you know, what you mean? He said – he said, they weren't going to let the bitch tell on me and get away with it." *Id.* p. 82-83 ll. 22-25 and 1-4. Further, Mr. Maga testified that in a

later conversation he asked the Defendant what happened to Carol Ashom. Mr. Maga testified that the following exchange took place:

> Jesse Maga: He said the bitch got shot.
>
> Attorney Madeira: Okay. And did you ask him a question about that?
>
> Jesse Maga: Yes. I said, what did you do, shoot her? I said, what did you mark her out? He said, no, I didn't do shit. He said, I had that shit done. He said, my family, you know, took care of that shit for me; they weren't going to let nothing happen to me.

*Transcript of Jury Trial*, 9/29/20, p. 83, ll. 12-18. Lastly, when Mr. Maga was asked about Ms. Snyder's involvement in cooperating with the Commonwealth against the Defendant, Mr. Maga testified as follows:

> Jesse Maga: He said she could link him to everything.
>
> Attorney Madeira: Okay. I'm talking about what he would do because she knew everything, did he link India and what might happen to her to what happened to Carol?
>
> Jesse Maga: He said, she's next. He said, she should – she thought – she would have learned her lesson from the last bitch that tried to tell on him. She thought shit was sweet. She knows better. She knows who he is and what he's about.
>
> Attorney Madeira: Did he ever tell you there was a principle he lived his life by?
>
> Jesse Maga: He lived his life by principles. He said, you know, you tell, you die. That's it. Live the life by the streets.
>
> Attorney Madeira: You used the word, I want to make sure we clarify this, you said, did you mark her out or whatever. What does "mark" mean?
>
> Jesse Maga: Kill.

*Transcript of Jury Trial*, 9/29/20, p. 85, ll. 7-24.

The Commonwealth's next witness was Kelvin Jackson, who was also incarcerated with the Defendant at one point at the Centre County Jail. Very tellingly, Mr. Jackson was nervous throughout the duration of his testimony, at one point testifying when asked on cross-examination about his nervousness "I'm very nervous. This dude is dangerous. He gets people killed. He got his brother killed." *Id.* p. 104 ll. 20-21. Mr. Jackson testified that the Defendant stated "he's in jail because some girl snitched on him and he said his young'uns killed this girl." *Id.* p. 93-94 ll. 25 and 1. Mr. Jackson further testified as follows:

> Kelvin Jackson: This girl was killed because she snitched on him. She was a CI.
>
> Attorney Madeira: She was a CI for the defendant?
>
> Kelvin Jackson: Yes, sir.
>
> Attorney Madeira: And I think you said, young'uns. I might have misunderstood you. Did you say who did this work for him?
>
> Kelvin Jackson: He said his young bull killed this girl, one of his young'uns.
>
> Attorney Madeira: One of his young'uns and, then, I think you said his young bull?
>
> Kelvin Jackson: Yes, sir.
>
> Attorney Madeira: What is a young bull?
>
> Kelvin Jackson: A young bull is a person that either works under you or looks up to you. A person that you have influence over.

Attorney Madeira: And how did you say this young'uns or young bull killed this girl?

Kelvin Jackson: He said that they shot her two times in the face, two times, like, in the chin.

*Transcript of Jury Trial*, 9/29/20, p. 94-95, ll. 22-25 and 1-15.

Mr. Jackson subsequently testified when asked if the Defendant ever specifically used the words "kill her" to his young'uns, and how the young'uns would have known what to do, "because they know that nobody is going to snitch on Dog [the Defendant] and still be able to walk the streets. Dog said that." *Id.* p. 98 ll. 18-21. Further, Mr. Jackson testified that the Defendant was in Centre County Jail and not in the Cambria County Jail because the Defendant stated he "got too much influence, so they don't want him in that jail. He said he had way too much influence" and that "he [the Defendant] could get people touched in that jail. He said even if people on the streets, he can get people touched on the streets." *Id.* p. 100 ll. 8-17.

Mr. Michael Beck was another witness called by the Commonwealth that had come into contact with the Defendant at the Somerset County Prison. Mr. Beck testified that as his friendship with the Defendant developed, the Defendant started to tell Mr. Beck more about his case and why he was in prison. Mr. Beck testified that the Defendant "sent the nephew over to kill her [Carol Ashcom]." *Id.* p. 110 ll. 25. Mr. Beck testified as to the relationship the Defendant had with his sons and nephews as follows:

Attorney Madeira: Tell me if he ever said anything to you about his relationship with his sons and nephews?

Michael Beck: Yes, they were tight.

Attorney Madeira: And who took orders from who in that relationship?

Michael Beck: Everybody – nothing happened unless Dog [the Defendant] say it happened.

Attorney Madeira: Nothing happens unless Dog says it happens?

Michael Beck: Yes.

Attorney Madeira: He says it happens before it happens and nothing happens unless he approves it?

Michael Beck: Nobody makes a move unless Dog says it.

Attorney Madeira: He's able to do that even from prison?

Michael Beck: Yes.

Attorney Madeira: How, if you know?

Michael Beck: Everybody listens to Dog. If you don't listen to Dog, then what? Do you know what I mean? If you don't listen to me, he don't listen to me about you, you know what I mean? It's a trifecta effect, so --.

*Transcript of Jury Trial*, 9/29/20, p. 113, ll. 1-8 and 11-20. Lastly, Mr. Beck testified that the Defendant wanted Mr. Beck, Shaun Hall, and "Little Man" who were all in jail with the Defendant to devise a plan or scheme to discredit the other witnesses. Mr. Beck stated that the Defendant wanted Mr. Beck to come to Court and testify that the three witnesses got together and said they were going to tell on him to get out of jail. The Defendant requested that the three witnesses testify that a man named Ike was responsible for the shooting of Carol Ashcom. *Id.* p. 114 ll. 10-25.

Lastly, Shaun Hall testified for the Commonwealth. Mr. Hall was also an inmate with the Defendant at the Somerset County Prison. Mr. Hall testified that the Defendant informed him that "some girl snitched on him, and he had his gang, lynch mob, one of the members kill her," Transcript of Jury Trial, 9/30/20, p. 9, ll. 3-4. Mr. Hall also testified that the Defendant solicited someone to commit the murder through the letters he wrote to his ex-girlfriend, India Snyder. *Id.* p.10 ll. 2-10. Mr. Hall further testified that, in regard to rats, snitches, confidential informants, or those that cooperated with the police, the Defendant stated that "they needed to be killed, they needed to be laid down." *Id.* p. 10 ll. 14-18. Lastly, Mr. Hall testified as follows as to who the Defendant identified as the person who shot Carol Ashcom:

> Attorney Madeira: Okay. Did the defendant tell you who killed his confidential informant, Carol Ashcom?
>
> Shaun Hall: Yes.
>
> Attorney Madeira: Who did he say it was?
>
> Shaun Hall: Los.
>
> Attorney Madeira: Los, did he use another name also?
>
> Shaun Hall: Mizzon.
>
> Attorney Madeira: All right. And did he tell you how Los, Mizzon, same person, is related to him?
>
> Shaun Hall: It's his nephew.
>
> Attorney Madeira: All right. And did he say why Mizzon?
>
> Shaun Hall: It was his turn. That he was up.
>
> Attorney Madeira: It was his turn, like it was Mizzon's turn to do what he was told to do?

Shaun Hall: To put in work, yeah.

Attorney Madeira: To put him to work you said?

Shaun Hall: Put in work.

Attorney Madeira: Put in work?

Shaun Hall: Uh-huh.

Attorney Madeira: And what does that mean when you put in work?

Shaun Hall: Kill somebody. Whatever the job may be.

Attorney Madeira: Okay. And at the time Mizzon was 14. So did he tell you how Mizzon would know where the confidential informant lives?

Shaun Hall: His son was supposed to take him by the house and show him where she lived.

Attorney Madeira: And, again, all of this that you're relating to us, who did you hear this from?

Shaun Hall: Shakir.

*Transcript of Jury Trial*, 9/30/20, p. 12-13, ll. 13-25 and 1-16.

As shown above, ample testimony was given to support beyond a reasonable doubt the jury's verdict in this case that the Defendant commanded, encouraged, and requested the specific action of Carol Ashcom's death. Further, the Commonwealth did throughout the course of the trial identify the shooter in this case as one of the Defendant's sons or nephews and as a member of the Defendant's Lynch Mob, although the statute does not require that the actual shooter be arrested, tried, or convicted prior to the arrest, trial, and conviction of the Defendant. The Court finds that, upon a detailed review of the testimony at trial, as outlined

above by the various Commonwealth witnesses, that sufficient testimony was given to support a conviction for the charge of Murder of the First Degree as an accomplice shown through the Defendant's letters, phone calls, and conversations with other inmates at the various prisons he was incarcerated in. Therefore, based upon the Court's thorough review of the trial transcripts, the Court concludes that the evidence, viewed in a light most favorable to the Commonwealth, was sufficient to support Defendant's convictions for Solicitation to Commit Murder and Murder in the First Degree as an accomplice for the death of Carol Ashcom.

## B. Insufficiency of the Evidence

Defendant Smith next argues that the Defendant's conviction is against the weight of the evidence presented at trial in regard to both counts. The standard of review regarding weight of evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. [An appellate court] may only reverse the verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Thompson v. City of Philadelphia*, 493 A.2d 669 (Pa. 1985). "A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the factfinder." *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the

evidence and that new process was or was not dictated by the interests of justice." *Commonwealth v. Brown*, 648 A.2d 1177, 1189–90 (Pa. 1994).

At the beginning of the jury trial for the Defendant, the jury was given the following instruction:

> It is the responsibility of the judge to decide all questions of law. Therefore, as I told you last week, you must accept and follow my rulings and instructions on matters of the law. I am not, however, the judge of the facts, and this is the key distinction. It is not for me to decide what are the true facts concerning the charges made against this defendant. You, the jurors, are the sole judges of the facts. It will be your responsibility to weigh the evidence, to find the facts from that evidence and then applying the rules of law which I give to you to the facts as you find them to decide whether or not the defendant has been proven guilty of the charges made against him.

Transcript of Jury Trial, 9/28/20, p. 10, ll. 11-23. Additionally, after the closing arguments were provided by counsel, the jury was again instructed as follows:

> You the jury are the sole and only judges of the facts. It's your responsibility to weigh the evidence, and based upon that evidence and the logical infrerences which flow from that evidence, to find the facts, to apply the rules of the law which I give to you to the facts as you find them, and then decide whether the defendant has or has not been proven guilty of any other charges. Transcript of Jury Trial, 9/30/20, p. 155, ll. 13-21.

> You must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive. The matter of the credibility to a witness, that is, whether his or her testimony is believable and accurate in whole or in part, is solely for your determination. Whether the witness has any interest in the outcome of the case or has any friendship or animosity toward other persons concerned in the case, the behavior of the witness on the witness stand and his or her demeanor, his or her manner of testifying, and whether he or she knows any bias or prejudice which might color his or her testimony, the accuracy of his or her memory and recollection, his or her ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies, the consistency or inconsistency of his or her testimony, as well as its reasonableness or unreasonable in light of all of the other evidence, those are the factors that might bare on your determination. Transcript of Jury Trial, 9/30/20, p. 158-159, ll. 13-25 and 1-7.

If you conclude that one of the witnesses testified falsely and did so intentionally about any fact which is necessary to your decision in this case, then for that reason alone, you may, if you wish, disregard everything that witness said.

However, you're not required to disregard everything that witness said. For this reason it is entirely possible that the witness testified falsely and intentionally so in one respect but truthfully about everything else. If you find that to be the situation, then you must accept that part of his or her testimony which you find to be truthful and which you believe, and you may reject that part you find to be false and not worthy of belief.

If you find there were conflicts in the testimony, you the jury have the duty of deciding which testimony to believe, but you should first try to reconcile, that is, fit together any conflicts in the testimony if you could fairly do so. Discrepancies in and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember, two persons witnesses an incident may see or hear it happen differently. Also, it is not uncommon for witnesses to be innocently mistaken in his or her recollection of how something happened.

If you cannot reconcile a conflict in testimony, then it's up to you to decide which testimony, if any, to believe and which to reject as not true or inaccurate. In making this decision, consider whether the conflict involves a matter of importance in your decision in this case or merely some unimportant detail, and whether the conflict is brought about by an innocent mistake or by an intentional falsehood. <u>Transcript of Jury Trial</u>, 10/08/20, p. 159-161, ll. 19-25, 1-25, and 1-2.

After listening to all of the evidence presented by the Commonwealth, the Defendant, and the Court's detailed opening and closing instructions, the jury found the testimony of the Commonwealth's witnesses to be credible as shown by the jury finding the Defendant guilty of both Solicitation to Commit Murder and Murder in the First Degree. The Court finds that the Commonwealth presented sufficient evidence to warrant a conviction of the Defendant beyond a reasonable doubt and that the jury's

verdict was not against the weight of the evidence and therefore denies Defendant's Motion for Judgment of Acquittal.

## II. MOTION FOR NEW TRIAL – ERROR OF COURT TO DENY DEFENDANT'S MOTION IN LIMINE IN REGARDS TO THE COMMONWEALTH'S INTRODUCTION OF PRIOR BAD ACTS

Defendant argues that the Court's denial of Defendant's Motion in Limine to preclude the Commonwealth from introducing evidence that could potentially paint the Defendant in a negative light prejudiced him in the eyes of the jury. Defendant requested via his Motion in Limine that the Court preclude the Commonwealth from introducing the following at trial: (1) Defendant Smith's prior criminal record and/or prior bad acts, (2) any reference to the homicide of Jarret Smith a/k/a "Chico", (3) any reference to Richard Agurs a/k/a "Noog", (4) any reference to the use of the term "Rhino", (5) any reference to a letter the Defendant wrote to India Snyder in which he wrote "I hate you. I swear I can't wait to see you dead...", and (6) any reference to the Defendant using the terms "honkie", "white bitch", "niggas", or any other terms that appeared to be racially insensitive. In response to this Post-Sentence Motion, the Court relies upon its Opinion and Order denying Defendant's Motion in Limine regarding Defendant's prior bad acts dated June 9, 2020.

## III. MOTION FOR NEW TRIAL – DENIAL OF DEFENDANT'S PRE-TRIAL MOTIONS TO SUPPRESS

Defendant argues that the denial of Defendant's Motions to Suppress permitted the Commonwealth to introduce evidence that greatly prejudiced the Defendant in the eyes of the jury. Defendant is specifically referring to his Motion to Suppress the wiretap that recorded Defendant's in-person visits at the prison. Defendant argues that the wiretap should have been suppressed due to the Application and Supporting Affidavit not meeting the requirements of

18 Pa.C.S.A. Section 5709(3)(i)-(vii) to warrant the issuance of a wiretap. Defendant is also referring to his Supplemental Motion to Suppress involving the Commonwealth's intention to present eight (8) letters written to India Snyder by the Defendant while he was incarcerated. It is Defendant's position that his Fourth Amendment rights were violated when the letters were intercepted because he had a reasonable expectation of privacy regarding his out-going mail at the prison. In response to this Post-Sentence Motion, the Court relies upon its Opinion and Order denying Defendant's Motions to Suppress dated May 20, 2020.

### IV. MOTION FOR A NEW TRIAL – THE COURT'S DENIAL OF THE DEFENDANT'S MOTIONS FOR BILL OF PARTICULARS

Defendant avers that the allegations set forth against him by the Commonwealth on both counts were "extremely vague" and were based on "speculation and innuendo," making it difficult for the Defendant to prepare a proper defense. In his two Motions for Bill of Particulars, Defendant requested the date(s), time(s), and location(s) of each act in furtherance of the charged offense and the nature of the act. In response to this Post-Sentence Motion, the Court relies upon its Opinion and Order denying Defendant's Motions for Bill of Particulars dated September 18, 2020.

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,　　: No.　1248-2019 / 562-2020
　　　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　: Post-Sentence Motions
　　vs.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
SHAKIR SMITH,　　　　　　　　　　:
　　　　　　Defendant.　　　　　　　:

## ORDER

**AND NOW,** on this 24th day of February, 2021, upon review of the transcripts from the jury trial, Defendant Smith's Post-Sentence Motions, Defendant's Brief in Support of Post-Sentence Motions, the Commonwealth's Answer to Defendant's Post-Sentence Motions, the transcript from the Post-Sentence Motions hearing, and the arguments presented by counsel, it is hereby **ORDERED, DIRECTED,** and **DECREED** that Defendant Smith's Post-Sentence Motions are **DENIED.**

BY THE COURT:

_____
Patrick T. Kinury, Judge

COPIES TO:
- ❏ DEF.　❏ C & F
- ☒ DA　❏ SHERIFF
- ☒ ATTY.　☒ OTHER
- ❏ PO
- ❏ PD
- ❏ JAIL
- ❏ JUDGE
- ❏ CA